NEW ORLEANS, M. & C. R. Co. *v.* CITY .OF NEW ORLEANS.*

*(Circuit Court, D. Louisiana.* June, 1878.)

1. ADJUDICATION—HOW DETERMINED.

In determining what has been adjudged courts will regard the decree, and in case of ambiguity, but not otherwise,. be governed by an accompanying opinion.

2. INJUNCTION—RES ADJUDICATA.

An injunction having been issued by a state court and perpetuated by the decree of the supreme court of the state, a similar injunction granted as between the same parties, with regard to the same subject-matter, in a new suit, by a court of the same state and removed to this court, the matter will be treated by this court as a thing adjudged, and the injunction perpetuated.

In Equity.

*John A. Campbell* and *A. Micou,* for complainants.

*B. Frank Jonas,* City Atty., and *W. W. King,* for defendant.

BILLINGS, D. J. This is a cause which was commenced in the "superior district court" of the parish of Orleans, and has been removed from that court to this. In this court, from its nature, it stands as a chancery suit.

Plaintiff alleges that in the year 1874 the city authorities (the defendants) sent a large force to beat down the walls of a freight depot belonging to this defendant company. As an incident of the suit, the complainants obtained an injunction in the "superior district court," *pendente lite,* and the object of this suit is to perpetuate that injunction. The mischief is of such a character as to make the case fall within that class of cases. which justifies the interposition of the courts of chancery.

The basis of the suit as set up in the petition of the complainant —now to be treated as a bill in equity—is a judgment of the supreme court of the state of Louisiana between the same parties contained in the record—No. 3,692 of that court.

On the other hand, the defendants set up a final decree rendered in the supreme court of the state of Louisiana, also between the same parties, known as No. 3,701 of the docket of said court.

An inspection of the record in this case discloses the fact that the complainants had, partly by purchase from private owners and partly by a grant of the legislature, obtained two sets of rights with reference to certain squares of ground in the city of New Orleans,

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

provided that the grants of the legislature were valid, and that the same series of acts of the legislature had given them also the right of way, and the right of putting down tracks and erecting depots upon these squares, as incidents of their right of way as a railroad.

The first right which was claimed was that "the complainants had acquired the fee to the land" in dispute; or, rather, the precise question was whether the fee was in the defendants or in the public. In the sec-- ond suit they claim rights with reference to their right of way, viz., their right of way, with their right to put tracks upon the land, and to maintain buildings for depots. In both of these suits the lower court, which was the superior district court, had given judgment in favor of the complainants, maintaining thereby, in the one, the rights of the company as owners of the fee, and, in the other, their right of way, and the incidents with reference to tracks and depots.

1. With reference to the *fee*. In the twenty-sixth volume of the Louisiana Annual, 478, the docket number being 3,701, the supreme court rendered a decree annulling the judgment of the eighth district court, and dissolving the injunction which had been issued by that court, and giving judgment for the city of New Orleans, maintaining the reconventional demand of the city, and restraining the plaintiffs from occupying the property in controversy.

Upon a rehearing, at page 485, the court modified their judgment as follows:

"In our opinion the injunction improperly issued in this case; but, as the city has made no claim against the plaintiffs, our former decree was erroneous in granting the demand in reconvention, and inhibiting the plaintiffs from occupying the property in controversy. Under the pleadings, all we can do is to render judgment in favor of the city, dissolving the injunction and dismissing the plaintiffs' suit, leaving the parties to their rights under the laws relative to the expropriation of property."

Then follows the final decree in the cause, as follows:

"It is therefore ordered that our former decree be set aside, and it is now ordered that the judgment appealed from be reversed, and that there be judgment in favor of the defendant, the city of New Orleans, dissolving the injunction herein, and dismissing the plaintiffs' suit, with costs in both courts, without prejudice to the rights of both parties under the laws of expropriation."

2. As to the rights of the complainants which sprang out of the grant to them of the right of way and its incidents. In this case there was also a judgment in the eighth district court in favor of the complainants, and an original hearing and rehearing in the

supreme court. Upon the first hearing, Judge WILEY, in the case known as No. 3,692, thus states the question in rendering the majority opinion, at page 517:

"This controversy arises out of the acts of the nineteenth of March, 1868, the seventeenth of February, 1869, the twenty-first of February, 1870, granting to the complainants for passenger and freight depots a space of ground. * * * Also granting the right to lay tracks, and occupy as a railroad, a strip of land extending down the levee to Elysian Fields street."

He then quotes a paragraph of the answer of the city, which in substance is that the use of that part of the batture for a railroad, and the enjoyment of the privileges granted by the legislature, would prevent its use as a *locus publicus* and highway.

Chief Justice LUDELING, at page 524, in his dissenting opinion at the first hearing, states the question thus: "The question involved in this case is simply whether or not the legislature can control the public quay or levee of the city of New Orleans without the consent of the city."

Upon the rehearing, at page 529, the majority opinion is rendered by Judge MORGAN very briefly as follows: "The sole question presented in this case is, has the state the power to grant to a railroad company the right of way through the streets of this city? A thorough examination of this question has led us to the conclusion that it has." And then follows the decree: "It is therefore ordered, adjudged, and decreed that the judgment heretofore rendered by us be avoided, annulled, and set aside, and it is now ordered, adjudged, and decreed that the judgment of the district court be affirmed, with costs."

If we turn to the decree of the district court as found in the printed record put in evidence, at pages 255, 256, we find it decreed that "the defendants be enjoined, prohibited, and restrained from, in any manner, interfering with or obstructing said plaintiffs in constructing or maintaining its railroad upon and on the levee, streets, and batture described and designated in the acts of the general assembly granting such rights and privileges to said company, and by the maps filed with the secretary of state and with the mayor of the city of New Orleans." They dismiss the reconventional demand of the city, and maintain the validity of the acts of the general assembly granting to the complainants the right to construct, maintain, and use its track, turn-outs, switches, depots, etc., along and upon the levee, streets, and batture in front of the city of New Orleans. And this judgment, by the final decree of the supreme court, was in all respects affirmed.

There is no doubt but that if a decree is free from ambiguity, it speaks for itself, and cannot be qualified by the opinion by which it may have been preceded. *Plicque* v. *Ferret*, 19 La. 318; *Keane* v. *Fisher*, 10 La. Ann. 261; *Trescott* v. *Lewis*, 12 La. Ann. 197; *McDonough's Succession*, 24 La. Ann. 34; 101 U. S. 351; 24 How. 333; *Smith* v. *Kernochen*, 7 How. 199. But I think that a careful analysis of the opinions, and of the decrees, shows that there is no ambiguity in either of the decrees, and that they are rendered in accordance with the opinions which, at the last, the supreme court formed. What the court meant to adjudge is also made manifest by what they say in the case of the city against complainants, (27 La. Ann. 415,) which was a case with reference to the power of the legislature to exempt complainants from wharfage dues. The court say (page 415) the grant was the control by the legislature of a public servitude.

Certainly this is true to the extent to which the injunction asked for in this cause goes, and it is only to that extent that the matter is involved. In the cause No. 3,701, which was first heard and disposed of, the supreme court had settled the question that the fee to that portion of the batture upon which this property was located was in the city of New Orleans, and in their decree upon the rehearing they maintained that view without change, amending their decree only so far as related to the reconventional demand of the city.

The matter involved in cause No. 3,692, at page 517, was, as I have stated,—conceding that the fee of the property was in the city, subject to the servitude which the public had, it being a quay or levee,— whether it could be controlled by the legislature without the consent of the city so far as to allow the plaintiffs their right of way, their tracks and depots; and it is clear that, comprehending fully the meaning of their decree, they had at last come to the conclusion that the legislature could so control a public place; for Judge WILEY, at page 529, in his brief dissenting opinion says he "concurs that the state can grant the right of way," but dissents from the conclusion of the majority of the court because the company could only get the land necessary for tracks and depots by expropriation or purchase.

I do not say that this last decree is such a decree as I should have rendered, but I find it free from all ambiguity, and that it is manifest, by the opinions that preceded it, that the supreme court of the state intended to render just such a decree as the words used import; certainly, to the extent of giving the complainants the right which in this suit they ask to have protected.

This being my conclusion, it is my duty to treat the matter presented as a thing adjudged.

Let there be a decree perpetuating the injunction, so far as relates to the matters included in the foregoing opinion.