CUNNINGHAM *et al.* v. PATRICK, *Appellant.*

Division One, December 23, 1896.

Contract: ATTORNEYS' FEES: COMPROMISE.    Plaintiffs having a disputed claim against defendant for services rendered as his attorneys, finally made by letter an offer of compromise to the effect that defendant should pay them $500 in cash, two notes for $1,250 each and a further sum of $1,000 on the successful termination of an appeal in a suit then pending.    Defendant, replying by letter, expressed satisfaction with the proposition and said: "I will endeavor to send $500 this month and my notes for the balance."    At different times thereafter, in response to communications from plaintiff, defendant stated he would settle up the matter as soon as he could and asked further indulgence.    *Held*, that the facts showed a binding acceptance by defendant of plaintiffs' offer of compromise, and an action on such acceptance was properly brought.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*L. S. Metcalfe, Jr.*, for appellant.

The terms of the letter of appellant dated June 11, 1889, in answer to one from respondents dated June 4, 1889, did not constitute a contract between the parties, as in order to convert a proposal into a contract the acceptance must be absolute and unconditional.    Lawson on Contracts, sec. 15; *Eggleston v. Wagner*, 46 Mich. 610; Pollock on Contracts [Wald's Ed.], p. 22; *Railroad v. Dane*, 43 N. Y. 240.

*Phillips, Stewart, Cunningham & Eliot* for respondents.

(1) An account having been rendered by plaintiffs to defendant in the fall of 1888, and that account having been in dispute as to the amount due, from that time down to June 4, 1889, plaintiffs' letter of June 4, and defendant's letter of June 11, 1889, constitute an account stated and a valid contract by defendant to pay accordingly.    *Powell v. Railroad*, 65 Mo. 658; *May v. Kloss*, 44 Mo. 300; *Marmon v. Waller*, 53 Mo. App. 610; *Kent v. Highleyman*, 17 Mo. App. 9; *Silver v. Railroad*, 72 Mo. 19; s. c., 5 Mo. App. 381; *Koegel v. Givens*, 79 Mo. 77; *Railroad v. Kimmell*, 58 Mo. 83; *Brown v. Kimmell*, 67 Mo. 430; *McCormack v. Sawyer*, 104 Mo. 36; 1 Am. and Eng. Ency. of Law, pp. 110–112, and note 1.    (2) Defendant's correspondence and conversations with plaintiffs from June 11, 1889, down to the filing of this suit May 24, 1893, treated the account as stated and adjusted.    This correspondence not only shows that defendant understood the account was

adjusted and knew the plaintiff so regarded it, but it was such as to induce plaintiffs to rely upon their having defendant's written contract and promise, and to let the time pass within which they might have sued on a *quantum meruit.* (3) Therefore if there had been any uncertainty or want of meeting of minds in the proposition of plaintiffs and the acceptance of defend-. ant, the subsequent correspondence and behavior of defendant estop him to deny that there was a contract. *Pelkington v. Ins. Co.,* 55 Mo. 172; *State v. Potter,* 63 Mo. 226; *Quinlan v. Keiser,* 66 Mo. 605; *Schenck v. Sautter,* 73 Mo. 46; *Chouteau v. Goddin,* 39 Mo. 250; *Garnhart v. Finney,* 40 Mo. 462; *Bank v. Frame,* 112 Mo. 514; Bigelow, Estoppel, 562, 571, 603, 604; *Farley v. Pettes,* 5 Mo. App. 265; *Krey v. Hussman,* 21 Mo. App. 345; *Savings Ass'n v. Kehlor,* 7 Mo. App. 163; *Taylor v. Saugrain,* 1 Mo. App. 316; *Hewitt v. Spannagel,* 14 Mo. App. 600.

ROBINSON, J.—For some time previous to June 4, 1889, there had existed an unsettled account between plaintiffs and defendant for services rendered by the former to the latter as attorneys in the conduct of a suit for the latter in the circuit court of the United States for the eastern district of Missouri. Plaintiffs had presented to defendant their bill for the balance due to them for the services so rendered and some correspondence and discussion had ensued between them about the amount of the balance.

No adjustment having been reached the plaintiff, on said fourth day of June, sent to the defendant the following letter:

"*William F. Patrick, Leadville, Colo.:*

"DEAR SIR:—I have had some conference with Major Cunningham with respect to our charge for services. The result is, that we feel like reducing our

bill to the lowest figure which will, in our judgment in any sense, be remunerative for the time expended in your interests. The amount of our account, as reduced voluntarily, was last October $4,500. To this may be added $200 or $300 for services since that time. We are willing, for the purpose of making a satisfactory adjustment with you, to reduce our total balance to $4,000, $1,000 of which shall be contingent upon the success of your appeal in the supreme court; the remainder to be paid in cash, $500 by July 1, and $2,500 in your notes at four and eight months, if that time is satisfactory to you. This is, all things considered, as well as we can do; and we think it cuts our charges down to quite a low basis. I hope you will regard it in this manner also and let us know on this proposition.                     E. C. ELIOT.''

To this letter the defendant, on June 11, 1889, answered as follows:

"*Cunningham & Eliot, St. Louis:*

"GENTLEMEN:—Your favor of the 4th inst. received. The proposition contained therein is satisfactory to me. I will endeavor to send you $500 this month and my notes for $2,500 more.

"Yours truly,

"W. F. PATRICK.''

Defendant did not pay the cash or give the notes specified in the above letters, and on the tenth day of August, 1889, plaintiff again wrote the following letter:

"Referring to our letter of the 4th of June, and your subsequent letter in reply, accepting the proposition therein made, that our charges should be so reduced as to make the balance due from you to us $4,000, of which $1,000 should be contingent upon the success of your appeal to the supreme court, and the remaining $3,000 to be paid, $500 on the first of July and $2,500 in notes at four and eight months respec-

tively, and referring further to the fact that we have not received the $500 which should have been paid on the first of July, we now herewith inclose two notes, each for the sum of $1,500 dated July 1, and payable respectively four and eight months after date, to our order, which notes we will thank you to sign and return to us, as we suppose you are not yet prepared to pay us the $500 in cash. Such an arrangement will be satisfactory to us, with the understanding that should your appeal to the supreme court be successful, you are still to pay us $1,000; otherwise nothing more than these notes."

Defendant did not answer this letter immediately, but on October 14, 1889, in answer to a telegram sent by plaintiffs to defendant about a matter pertaining to his suit then pending on appeal in the supreme court and partially in answer to plaintiffs' letter of August 10, the defendant wrote to plaintiffs as follows:

"Your telegram received. I had the appearance attended to on receipt of your letter. I also sent the clerk $35 docket fees. I didn't send you your notes as I didn't see how I could meet them at maturity. I am sorry that I have not been able to settle this account; but as yet I have found it impossible. At the time I gave the appeal bond I had to borrow a large amount of money and which tied me up badly. I am now trying to sell some property, and as soon as I do, will settle the matter. You have already been very indulgent; but I will have to ask you to be patient a little longer. I assure you I will settle your account in full as soon as possible.

"Yours truly,

"W. F. Patrick."

Defendant not having given his note or paid plaintiff any money pursuant to the terms of the settlement

Vol. 136 mo—40

as expressed in the letters of plaintiffs of June 4, to defendant, and his answer thereto on June 11, plaintiff again, on April 8, 1891, sent to defendant the following letter:

"*William F. Patrick, Leadville, Colorado:*

"DEAR SIR:—We have written to you at various times in respect to our claim against you for services, and have not received any advices from you about the matter. You may remember that upon a compromise or settlement basis we agreed with you more than a year ago that we would receive $3,000 in cash and $1,000 upon decision of the case in the supreme court, if you were successful in your appeal. We have been disposed to wait patiently your convenience in carrying out this adjustment, which was to have been concluded at once. Now, however, we feel that we will have to proceed in the courts, unless you can make payment of at least $1,000 on account."

Plaintiffs again wrote to the defendant on the fifteenth day of July, 1891, a copy of which letter, however, does not appear in the records of this case, but defendant's answer thereto, of date July 18, does appear, and is as follows:

"Yours of the 15th instant received. I am sorry that I have not been able to send you any money on account. I have been trying hard to make some sales, but everything out here is so dull now, I have not as yet been successful. I have parties working on matters that I hope will be closed up within the next thirty or sixty days.    *  *  *  I have been having a hard pull, but think I will come out all right, and hope you will be able to further indulge me.

"Yours truly,

"W. F. PATRICK."

On the twenty-fourth day of May, 1893, defendant still not having given his notes or paid plaintiffs any

money pursuant to the terms of settlement as suggested in plaintiffs' letter of June 4, plaintiffs caused this suit, based upon the following petition, to be instituted:

"Edward Cunningham, Jr., and Edward C. Eliot, Plaintiffs,  v.  William F. Patrick, Defendant.    | City of St. Louis in the Circuit Court.

"Plaintiffs state that prior to the fourth day of June, 1889, they were partners in the practice of law under the firm name of Cunningham & Eliot; that as such partners they had theretofore, at the special instance and request of the defendant, rendered to the defendant their services in the defense of a certain suit in the circuit court of the United States for the eastern district of Missouri, wherein one Frank Bowman was plaintiff and the defendant herein was defendant.

"Plaintiffs state that after said services had been rendered and a small part of the value thereof had been paid by defendant to plaintiffs, a difference arose between plaintiffs and defendant as to what sum was still due from defendant to plaintiffs therefor; and that thereupon plaintiffs proposed to defendant in and by their letter dated the fourth day of June, 1889, that by way of compromise and settlement of said difference and dispute plaintiffs would accept from defendant, in full payment for their said services, then remaining unpaid for, and in full satisfaction of their claim against the defendant in respect of said services, the following sums of money to be paid by defendant to plaintiffs at the following dates, to wit:

"$500 on the first day of July, 1889; $1,250 on the first day of November, 1889; $1,250 on the first day of March, 1890; and the further sum of $1,000 if and when the defendant should be successful in his appeal

theretofore taken by him from the decree of said circuit court in said cause to the supreme court of the United States.

"Plaintiffs state that the defendant thereupon, in and by his letter bearing date the eleventh day of June, herewith filed marked exhibit B, accepted the said proposition of plaintiffs and then and thereby, in consideration thereof and of said services, promised and agreed to pay plaintiffs the aforesaid sum of money at the respective dates above set forth.

"Plaintiffs state that thereafter, on the twenty-fourth day of April, 1893, the defendant was successful in his said appeal to the supreme court of the United States, by reason of the fact that whereas the decree of said circuit court had been in favor of the said Bowman, plaintiff therein, and against the defendant William F. Patrick, adjudging defendant to pay to said Bowman or his assigns a large sum of money, and to convey to said Bowman or his assigns, a large and valuable property, and to pay the costs of said suit, the supreme court of the United States on said twenty-fourth day of April, 1893, reversed the said decree and ordered and directed the said circuit court to dismiss the bill of the said Bowman and the proceedings in which said decree had been entered.

"Plaintiffs further say that the defendant, though often requested and demanded, has failed and refused and still refuses to pay plaintiffs the aforesaid sums of money or any part thereof. Wherefore plaintiffs pray judgment against the defendant for the sum of four thousand dollars, with interest at the rate of six per cent per annum; on five hundred dollars from the first day of July, 1889; on twelve hundred and fifty dollars from the first day of November, 1889; on twelve hundred and fifty dollars from the first day of March, 1890;

and on one thousand dollars from the twenty-fourth day of April, 1893, and for costs of suit.

"EDW. CUNNINGHAM

"& EDW. C. ELIOT, *pro se.*"

To the allegations of the petition defendant filed simply a general denial.

A jury was waived, and the cause was tried before the court on the testimony alone offered in behalf of plaintiffs, at the close of which the defendant asked a declaration of law that upon the evidence the plaintiffs were not entitled to recover, which being denied, the court made its finding and judgment for plaintiffs in the sum of $4,841.50, to reverse which, after timely motions filed, this appeal is prosecuted.

After reading in evidence the correspondence as above set out, plaintiffs also proved that previous to the fourth day of June, 1889, they as attorneys had rendered services to defendant in connection with a certain suit in the United States circuit court for the eastern district of Missouri, wherein the defendant in this suit was a defendant in that; and that the judgment in the circuit court of the eastern district was against defendant; that defendant was contemplating prosecuting an appeal therefrom to the United States supreme court, as was afterward done, on or about the time of the writing of the first letter by plaintiff to defendant of June 4, 1889; that before that date they had presented their bill to defendant for the balance due for services rendered, up to that time and that some correspondence and discussion had ensued between them, but that the amount of the balance had not been adjusted when the letter of June 4 was written. Mr. Eliot, one of the plaintiffs, also testified that on several occasions after writing the proposition of June 4 to defendant and his reply thereto he met defendant in St. Louis and asked him about the payment of his

bill, and that the only reason assigned by him for his failure to have done so was financial embarrassments of one kind and another. It was also shown by the mandate of the supreme court of the United States, that the defendant's appeal to that court was successful, that the case was disposed of, and that the date of the decision was April 24, 1893.

This in substance was all the testimony offered in behalf of plaintiffs, and, as above stated, defendant offered no testimony, but asked a declaration of law that upon the evidence plaintiffs were not entitled to recover.

The sole question presented in the case upon the pleadings and facts as above set out, is, whether or not the letter of June 4 as a proposition of settlement, and the defendant's answer thereto on June 11, amounts to such an acceptance of the terms thereof, as would operate to make a binding contract between the parties; or, if the answer of June 11 be not treated as an absolute acceptance, in and of itself, of the terms of plaintiffs' letter of June 4, would not an acceptance be implied from the conduct, conversations and correspondence of defendant with plaintiffs.

Defendant's contention here is that in order to convert the proposal of plaintiffs' letter into a promise upon which a suit could be founded, the acceptance by defendant must have been absolute, unqualified, and unconditional; that there are no express words of acceptance of the terms of plaintiffs' offer, or a promise to pay the money named, in defendant's letter to plaintiffs, and again that the use of the expression, "I will endeavor to send you $500 and my notes," in his letter to plaintiffs, was a reservation upon the part of defendant and not an acceptance in terms of the proposition made to him; and that, as no agreement by way of an acceptance had been shown, plaintiffs'

suit should have been upon a *quantum meruit*, and not upon an express contract.

Without going into an analysis of the language of defendant's answer of June 11, or passing upon the force of the expressions used therein, we will consider the case as we .presume the circuit court did, and if, from all the facts as disclosed by the record, the finding and judgment of the trial court can be sustained, we will presume, in the absence of anything showing a less restricted view by the trial court, that its judgment was made upon the entire facts as developed, and not upon the mere matter of interpretation of the specific language of defendant's answer or reply of June 11.

If, for the sake of defendant's contention, we should treat the language of defendant's answer of the eleventh as qualified or indefinite, so that in looking at the proposition in plaintiffs' letter of June 4, and defendant's answer of the eleventh, alone and by themselves, it could not be said that the minds of the parties met, and a contract was made upon which at the time an action might have been maintained, the subsequent correspondence and conversations of plaintiffs with defendant clearly manifest what plaintiffs' understanding of the agreement of settlement was, and of defendant's acquiescence therein; and defendant having induced plaintiffs to forbear, and to rely on their having his contract for a fixed definite sum, as indicated by their letters, he will not be heard to say there was no such contract.

If defendant did not intend to be bound by the terms of settlement proposed in plaintiffs' letter of June 4, why did he, when plaintiffs again wrote him on August 10, rehearsing the exact terms of the settlement as contained in their letter of June 4, wherein this further significant language appeared: "Referring

to our letter of June 4, and your subsequent letter in reply accepting the proposition therein made," not express his disapproval then of the terms of settlement again repeated to him, and deny his acceptance of the proposition of their letter as again announced and understood by plaintiffs?

The books abound with authority that when one of two parties has a perfect understanding of the understanding of the other as to the meaning of the terms of a contract or proposition of settlement that may be doubtful, the one knowing the understanding of the other (as defendant must have known after the explicit letter to him from plaintiffs of August 10) and allowing that other to act on that understanding to his loss or injury, will be estopped from denying there was such an understanding or agreement between them; or that the minds of the two did not meet. In such cases the understanding of one, with the knowledge of that understanding by the other, will be treated as the understanding of both.

Upon all the facts of this case, defendant was clearly liable on the contract of adjustment and settlement as sued upon by plaintiffs.    The judgment of the trial court will be sustained.    BRACE, C. J., and MACFARLANE, J., concur.    BARCLAY, J., concurs in the result as follows: "Concurs in affirming the judgment on the ground that the correspondence and mutual conduct of the parties tend to prove an agreement of settlement or adjustment of the account on the basis of defendant's letter of June 11, 1889, in reply to plaintiffs' of June 4, 1889."