10          SUPREME COURT OF UTAH.          [Sept.

Salt Lake City et al. v. Salt Lake City W. & E. P. Co. et al., 54 Utah 10.

SALT LAKE CITY et al. v. SALT LAKE CITY WATER & ELECTRICAL POWER CO. et al. (BENNION et al., Interveners).

No. 3081.   Decided June 14, 1918.   On Application for Rehearing September 17, 1918.   (174 Pac., 1134.)

1. WATERS AND WATER COURSES—DECREES—CONSTRUCTION—PUMPING EXPENSE. A decree distributing water, providing that, if pumps are started upon request of less than three of the parties, the requesting party, "and such of said parties as use water in excess of their portion" of the natural flow, shall pay cost of such pumping, construed not to require a party using only its portion and a portion purchased of another party to pay part of expense of pumping done at the request of a third party. (Page 15.)

2. JUDGMENT — DECREES — CONSTRUCTION — EXTRANEOUS CIRCUMSTANCES. Extraneous circumstances and conditions may not be resorted to to render uncertain a decree the language of which is free from ambiguity and doubt. (Page 17.)

3. JUDGMENT—COLLATERAL ATTACK—INEQUITABLE JUDGMENT. If a decree distributing the expense of pumping waters is not fair and equitable, the remedy lies in a direct application to modify, and not in modification by construction in another proceeding. (Page 18.)

### On Rehearing.

4. JUDGMENT—DECREES—CONSTRUCTION—INTENTION—LANGUAGE. The meaning and effect of a decree is to be ascertained from the manifest intention of the court, of which the best evidence is the certain and unambiguous language of the decree itself. (Page 19.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. C. W. Morse,* Judge.

Action by Salt Lake City and another against the Salt Lake City Water & Electrical Power Company and others.

From a judgment in favor of the plaintiff the Utah & Salt Lake Canal Company and against the defendant the South Jordan Canal Company, the latter appeals.

REVERSED and REMANDED, with directions to dismiss.

*Stewart, Stewart & Alexander* of Salt Lake City, for appellant.

*Thurman, Wedgwood & Irvine* of Salt Lake City, for respondent.

FRICK, C. J.

This case was before this court in another form, as appears from the decisions reported in 24 Utah, 249, 67 Pac. 672, 61 L. R. A. 648, reaffirmed in 25 Utah, 456, 71 Pac. 1069; and again in 43 Utah, 591, 137 Pac. 638. In those decisions, however, the questions respecting the rights to the use of water and matters incidental thereto were involved and adjudicated, while in this proceeding, which is merely incidental to all of the former proceedings, the question of the apportionment of the cost and expense of pumping water from Utah Lake, which water is distributed among all of the irrigating canals owned by the respective parties to the action in the proportions fixed in the former decisions, is involved.

As appears from the former decisions the district court retains perpetual ''original jurisdiction' in this case and the subject-matter thereof and of the parties thereto * * * for the purpose of all necessary supplemental orders and decrees which may be required to make effectual the rights awarded and preserved by this decree.'' The present proceeding was therefore commenced by the Utah & Salt Lake Canal Company, hereinafter called the applicant, against Salt Lake City and the others named in the caption, to compel them to contribute a portion of the costs and expenses of pumping water from Utah Lake for the irrigation season of 1914. This proceeding was, however, not commenced as an independent action, but was commenced merely to enforce certain provisions of the original decree, and hence the title of the original action was retained.

In the original decree, after determining the respective rights of the parties to the use of water, and after adjusting their respective rights to the pumping plant which is part of the irrigation system owned by the respective parties, the court also determined when, under what circumstances, and

to what extent each party should contribute to the cost and expense of pumping water from Utah Lake into the canals of the respective parties when the flow by the force of gravity no longer is sufficient to supply the amount of water required by the respective parties. With respect to the matter just stated, the decree here in question reads as follows:

"That any and all of said pumps may be started at any time during the irrigation season upon the request of three or more of the above-named parties, to-wit, Salt Lake City, Utah & Salt Lake Canal Company, East Jordan Irrigation Company, South Jordan Canal Company, and North Jordan Irrigation Company, and when so started each of said parties shall pay the cost of pumping the water used by it during that year (except as provided in the next following paragraph) in proportion to the number of acre feet used by each of said parties respectively.

"If three of said parties shall fail to agree upon the time for the starting of said pumps, they may be started at any time during the irrigation season at the request of either or any of said above-named parties, namely, said city and said irrigation and canal companies; provided, however, that in such event the party or parties so requesting the starting of said pumps and such of said parties as use water in excess of their portion, as defined in the original decree herein, of what the natural gravity flow from Utah Lake into the Jordan river would be at that time, if said pumps were not in operation, shall pay the additional cost and damages, if any, caused by the operation of the said plant in pumping the water, in proportion to the acre feet of water used by them, until such times as three of said parties shall each be using water in excess of its portion, as defined in said decree, of what the gravity flow would be at that time, if said pumps were not in operation, from which time all of said irrigation and canal companies and said city shall pay for the operation and maintenance of said pumps in proportion to the number of acre feet used by each. The gravity flow herein referred to is the proportion of water which each of said parties would be entitled,

under the original decree herein, to receive if said pumping plant were not in operation.''

At the hearing in the court below the proceeding was dismissed, at the request of the applicant, as against all of the parties except the South Jordan Canal Company, hereinafter styled appellant.

The court found that the amount appellant should contribute to defray the cost of pumping water for the year 1914 was $1,015.65 and entered judgment accordingly. The appeal is from that judgment.

The facts upon which the judgment is based are not in dispute. The undisputed facts are that in 1914 the pumps were started at the sole request of the appellant, the appellant and the other canal companies expressly refusing to consent to the starting of the pumps for the reason, as they alleged, that they received sufficient water from Utah Lake by the natural or gravity flow to supply their needs. As will appear from the former decision, one J. Fewson Smith was appointed commissioner, and he has for many years acted as such to distribute the water and to enforce the provisions of the decree and orders of the court. In 1914, in response to an inquiry of the city engineer of Salt Lake City, the commissioner wrote as follows:

"Sept. 29, 1914.

"Mr. Sylvester Q. Cannon, City Engineer, City—Dear Sir: Referring to your letter of September 19, 1914. Since the pumps were started this season all water from Utah Lake has been distributed in such a way that none of the canals except the Utah and Salt Lake has received more than they would have been entitled to had there been no interruption of the gravity flow. Therefore the understanding of yourself and other canal presidents with regard to the distribution of the pump water this season is correct, as expressed in the letter referred to.''

While the foregoing statement was not literally true in so far as the whole of the 1914 season was concerned, yet it was literally true that no water in excess of the gravity flow was ever asked for by any of the water users except the applicant,

and what little of the pumped water did flow into the canals of the other users was merely incidental, and hence has no bearing upon what the decision in this proceeding should be.

The appellant in 1914 did, however, use more water in its canal than it was entitled to from the gravity flow. It, however, did not obtain such excess from the water that was pumped by the applicant from Utah Lake in response to any demand made by the appellant for water.

The facts respecting the excess water used by appellant for the year 1914, the only year in question here, are as follows: The appellant applied to Salt Lake City for permission to use a certain quantity of water to which said city was entitled, but was not using, during the whole or a portion of the irrigation season of 1914. Pursuant to said application, the city engineer wrote the following letter to the water commissioner, whose duty it was to distribute the water among the several users, to wit:

"July 15, 1914.

"Mr. J. Fewson Smith, Commissioner, Salt Lake City, Utah—Dear Sir: You are hereby authorized and instructed to deliver to the South Jordan Canal Company sixty (60) second feet of water, or any part thereof, belonging to the Jordan and Salt Lake City Canal, that may be desired by them, during the remainder of this irrigation season, unless otherwise notified by me."

The commissioner distributed sixty second feet of water belonging to Salt Lake City to the appellant. Salt Lake City, during all of the time that said water was distributed to appellant, was entitled to said 60 second feet of water as part of the gravity flow, and hence no part of the sixty second feet appellant received from Salt Lake City, and no part of the water that was distributed to it through its canal for the year 1914, was pumped water within the purview of the decree as we construe it. It is manifest, however, that if Salt Lake City had not authorized appellant to divert the sixty second feet of water into appellant's canal appellant would have been compelled to make application for and use sixty second feet of pumped water. It is, however, equally mani-

fest that if Salt Lake City had used the sixty second feet of water for any purpose the applicant would have been required to pump precisely the same quantity of water during the season of 1914 it in fact did pump, and in such event it could not have called on Salt Lake City, nor on any of the other owners of canals, to contribute to the cost and expenses of pumping water unless one or more of the others had used water in excess of the gravity flow. Applicant's counsel, however, most earnestly contend that, in view that the appellant during the irrigation season of 1914 did use water in excess of the amount it would have received from the gravity flow, it should contribute to the cost and expense of pumping water to the extent that it used water in excess of the gravity flow, regardless of the agreement between appellant and Salt Lake City respecting the use of the latter's water. While counsel for applicant do not contend that the arrangement between Salt Lake City and the appellant. for the use of the sixty second feet of water was wrong or unlawful, yet they insist that under that portion of the decree we have above quoted no party to the decree may use any water from Utah Lake in excess of the gravity flow to which such party is entitled without becoming liable to contribute to the cost and expense of pumping, although such party may use the gravity flow to which one or more of the water users may be entitled. The district court so construed the decree, and hence found and entered judgment as before stated.

Appellant's counsel, with much vigor, insist that the court erred in its construction of the decree and in entering the judgment. .

It devolves upon us, therefore, to construe and determine the meaning of the original decree on which this proceeding is based.

It seems to us that the language of the decree is clear and free from ambiguity. In the first paragraph of the decree quoted above it is quite clear when and under what circumstances the pumps may be started. It is there provided, in clear and explicit terms, that in case three or more of the five parties named in the decree shall request

that the pumps be started, then each one of the five parties must contribute to the cost and expense of pumping water in the proportion there stated. In the succeeding paragraph of the decree it is, however, just as clearly and explicitly provided that in case three of the parties fail to agree upon the time the pumps shall be started the pumps may, nevertheless, be started at the request of either one of the five parties aforesaid; but that, in the event less than three make the request, to start the pumps, the one, or, if there be two who request that the pumps be started, the two requesting, must pay the cost and expense of pumping the water unless some of the others are using more water than would flow into their canals by gravity, and in case they use more than the gravity flow they must contribute to the cost and expense of pumping in the proportion that they are using water in excess of such gravity flow. In that paragraph it is, however, again stated that in case three or more request the operation of the pumps, all five must contribute in the proportion that they receive water into their canals. In order to avoid any misunderstanding, however, of what is meant in the decree by "gravity flow," it is explicitly provided:

"The gravity flow herein referred to is the proportion of water which each of said parties would be entitled, under the original decree herein, to receive, if said pumping plant were not in operation."

The court thus, in express terms, determined what is meant by the gravity flow. If, therefore, Salt Lake City was entitled to sixty second feet of the gravity flow when the pumps were started in 1914, and the appellant was also entitled to the amount of gravity flow it received at said time, then the mere fact that Salt Lake City permitted appellant to use the gravity flow to which the former was entitled could in no way affect the applicant in the amount of water it was required to pump for either of the other water users. Applicant's counsel in effect concede this, since they admit that if Salt Lake City had used the sixty second feet of water, and the appellant had used the precise amount which came to it by gravity flow, the appellant could not require contribution in this proceeding

from either of the parties. If that be so—and there can be no
doubt concerning the truth or correctness of the statement—
how can the applicant complain because Salt Lake City per-
mitted the appellant to use the gravity flow to which the city
was entitled so long as what was used did not exceed "the
proportion of the water which each of said parties would be
entitled, under the original decree," as it is expressed in the
decree? If Salt Lake City could have used the sixty second
feet of water through its canal without affecting the rights
and without becoming liable for any part of the cost of pump-
ing the water, how can it be held that the appellant is liable
merely because it used what it is conceded by the applicant
that Salt Lake City had a right to use and could have used
with impunity? In doing that, how did either the appel-
lant or Salt Lake City transgress anything said in the decree,
or how did that require the applicant to pump a drop of water
it would not have been required to pump if Salt Lake City had
used all of its sixty second feet of water and the appellant had
used all of its gravity flow? What was done amounted to just
that—nothing less, nothing more. In doing that no liability
arose under the terms of the decree. True, the decree could
have been so framed as to prohibit one party to the decree
from using the gravity flow of one or more of the other parties
if to do that resulted in injustice or inequality. But such
was not done. The natural, obvious, and ordinary meaning
of the language used in the decree is clearly to the contrary.

Counsel for the applicant have, however, at great length,
set forth in their brief and argument the entire history of the
litigation, and all of the circumstances and conditions which,
they contend, have a bearing upon the equities of the
case and the justice of their contention. Where the
meaning of the language of a statute, writing, or docu-
ment is obscure, ambiguous, or uncertain, it is always proper
to have recourse to the surrounding circumstances and con-
ditions for the purpose of determining the meaning of the
language, and in that way arrive at the intention of those
who used the language to express their purpose. Where, how-
ever, as here, the language of the decree by which all parties

thereto are bound is free from ambiguity and doubt, then the rule is elementary that extraneous circumstances and conditions may not be resorted to if to do that makes the meaning of the language uncertain or ambiguous. Extraneous matters may be invoked to clear up uncertainty and doubts, but not to create them. Neither is this a case where it is necessary or proper to expand or restrict the meaning of words or phrases to create harmony between conflicting provisions. There is no reason whatever why the natural, obvious, and ordinary meaning of the language used in the decree should not be followed. If, under such circumstances, the ordinary meaning of the language used is departed from, there is really no limit to which a court could not go. The exigencies of the particular case would perhaps suggest a limit, but even that could not prove a deterrent in all cases. The only safe and rational rule, therefore, is to abide by the natural and ordinary meaning of the language used, and such rule we feel in duty bound to follow in this as in all other cases.

By what we have said we do not wish to be understood as holding that the decree as it now stands is or is not, under all circumstances, fair, equitable, and just in so far as the apportionment of the costs and expenses of operating the pumps are concerned. If, however, conditions requiring it have arisen that can be established by proper evidence, the lower court has ample power to modify the decree so as to reflect equity and justice under all circumstances to all the water users. The decree cannot, however, be modified by construction. If that is done, it should be done upon a proper application, and after giving all the interested parties an opportunity to produce evidence, and to be heard upon the necessity for and the extent of the modification, if any be necessary. The court, after hearing the evidence, should make findings of fact and modify the decree only in accordance with the evidence, and so as to make the same fair, just, and equitable to all the parties. Merely to apportion the costs and expenses of operating the pumps, as was attempted in this case, may, under the circumstances, not be fair, just, and equitable to all of the water users. This fact,

if it be a fact, is alone sufficient to require a hearing and the production of evidence before the decree is modified.

There is another question raised by appellant, but as we understand the record, that, in view of the foregoing conclusions, is of no consequence now. Indeed, counsel for the applicant frankly conceded at the hearing that the court had erred in that matter.

From what has been said it necessarily follows that the judgment should be reversed. It is therefore ordered that the judgment be, and the same hereby is, reversed, and the cause is remanded to the district court of Salt Lake County, with directions to dismiss the proceeding. Appellant to recover costs.

McCARTY, CORFMAN, and GIDEON, JJ., and STEPHENS, District Judge, concur.

On Application for Rehearing.

FRICK, C. J.

Counsel for the plaintiff, Utah & Salt Lake Canal Company, have filed a petition for a rehearing. They, however, also ask that, in case a rehearing is not granted, for the reasons hereinafter stated, the opinion as filed should, nevertheless, be modified in a certain particular. We shall first take up the matter of granting a rehearing.

The principal reason why a rehearing should be granted, stated in counsel's own words, is:                    **4**

"A proposition of law was stated in respondent's brief which decides the case, and which apparently was not passed upon, or referred to, in the opinion."

In connection with the foregoing statement counsel also say:

"It is a rule of law that the meaning and effect of decrees, as well as statutes, are to be ascertained from the manifest intention of those making them."

In support of the legal proposition counsel cite *Doscher et*

Salt Lake City et al. v. Salt Lake City W. & E. P. Co. et al., 54 Utah 10.

*al.* v. *Blackiston et al.,* 7 Or. 404; *New Orleans M. & C. R. Co.* v. *City of New Orleans* (C. C.) 14 Fed. 373.

From the Oregon case counsel quote the following excerpt:

"To have this decree operate as contended for by counsel would be to make it effectuate an end contrary to the manifes intention of the court. The meaning and effect of decrees as well as statutes are to be ascertained from the manifest intention of those making them."

That case was one where the court in a divorce proceeding made a transfer of certain property. Just before making the statement quoted by counsel the court said:

"It was an attempt to convey by decree of a court. In such conveyances there must be one who holds the title to be conveyed and one who is to receive it; and, if the decree fails to make the conveyance, the title will remain where it was, for a decree should never be made to operate against the *manifest* and *declared* intention of the court." (Italics ours.)

Now, it is quite true that in the opinion it is not in terms said that the construction we placed on the original decree reflected the *intention* of the court, yet from what we did say that was necessarily implied. We say necessarily implied, for the reason that the intention of the author of a judgment, contract, or any other writing must necessarily be gathered from the language contained in the judgment, etc. When once the meaning of the language used by the author is ascertained, then, ordinarily at least, from a legal point of view, his intention is likewise ascertained. How is the meaning and effect of the author's language to be ascertained? There is but one way, and that is by considering the language in the light of the subject-matter and giving the words their usual and ordinary meaning and effect. If, after doing that, the meaning of the language is clear, then the intention must also be clear, and there is no further room for construction. There is nothing to construe when the meaning of the language is ascertained. To say that the unexpressed intention of the author controls as against the usual and ordinary meaning of the language is to fly in the face of all rules and canons of construction. To say that a judgment can be made to mean something contrary to the ordinary and usual meaning of the

language used, except in case of a practical construction and application by the parties to the judgment, would not only be contrary to all rules of construction but would be most dangerous in practice. If such were the law, a party might be held guilty of contempt for violating a judgment or decree when he had strictly followed the ordinary and usual meaning of the language used therein. Moreover, the doctrine of res adjudicata could then be restricted or expanded at the will of the court. While, as before stated, we did not articulate the doctrine now urged by counsel, we, nevertheless, clearly observed and applied it by stating what, in our judgment, constituted the ordinary, natural, and obvious meaning of the language contained in the decree. We are still of the opinion that the construction we placed upon it is the correct one. We still think that the ordinary, natural, and obvious meaning of the language used in the decree, when considered as a whole, is that in case three of the parties refuse consent to the starting of the pumps, and do not use water in excess of what comes to them by the gravity flow, neither of them can be compelled to contribute to the expense of pumping water that is pumped for the benefit of either or both of the other two parties. It is true, as counsel quote, the decree provides that "such of said parties as use water in excess of their portion * * * of what the natural gravity flow * * * would be * * * if said pumps were not in operation shall pay the * * * cost * * * of * * * pumping * * * in proportion, * * *" etc. The decree, however, also provides that, in case three of the parties shall fail to agree that the pumps shall be started, then the one, or, in case there are two, who desire the pumps started, must pay the expense of operating them, and the cost of pumping must be paid by them "until such times as three of said parties shall *each* be using water in excess of its portion * * * of what the gravity flow would be at that time if such pumps were not in operation." (Italics ours.) The decree thus expressly provides that it is only when *each* of three of the five parties use water in excess of the gravity flow that they must contribute to the expense of operating the pumps. Counsel's contention, however, is that in case *one* of the three parties is

22          SUPREME COURT OF UTAH.          [Sept.

Salt Lake City et al. v. Salt Lake City W. & E. P. Co. et al., 54 Utah 10.

permitted to use a part of the gravity flow belonging to another of the three parties the one using the water must contribute to the payment of the cost of operating the pumps which are started by either one or both of the other two parties, and that such is the case notwithstanding the nonconsenting party is not using water in excess of the gravity flow and his use of water would have no effect whatever on the pumps. The mere fact that one of the three nonconsenting parties uses the gravity flow of one of the other two nonconsenting parties in no way affects the pumps. If all of the five parties are satisfied with the gravity flow, it makes no difference whatever whether one of the three nonconsenting parties uses only his portion of the gravity flow or whether he uses the portion of one or both of the other two. The decree does not say that if *one* of the three parties shall use more than the gravity now he must contribute. But what it says is that if *each* one of three shall use water in excess of the gravity flow they must contribute to the expense of operating the pumps. So long, therefore, as the combined gravity flow belonging to all the three nonconsenting parties is not exceeded it can have no effect on the gravity flow of the other two, and hence if either one or both of the other two are not satisfied with the quantity of water that comes to them by gravity flow, and thus start the pumps, they, as a matter of course, should pay the cost of pumping. That is just what the decree provides for. Any other construction would result in compelling the nonconsenting parties to contribute to the cost of pumping when neither of them is using a gallon of water in excess of the gravity flow and thus in no way affect the use of the pumps.

As is well said in 23 Cyc. 1101: .

"A judgment should be so construed as to give effect to every word and part of it, including such effects and consequences as follow by necessary legal implication from its terms, although not expressed."

A careful reading of the decree clearly shows that we have merely enforced the foregoing rule of construction.

In the other case cited by counsel, namely, *New Orleans M. & C. R. Co.* v. *City of New Orleans*, it is said:

"In. determining what has been adjudged courts will regard the decree, and in case of ambiguity, but not otherwise, be governed by an accompanying opinion."

We have no quarrel with that statement of the law and we certainly have not transgressed it.

It is not necessary to refer to the other reasons urged by counsel why a rehearing should be granted.

Counsel, however, insist that the opinion should be modified. The reason stated in their brief why that should be done is as follows:

"The opinion rendered appears unfair and unjust to respondent's counsel for the reason that it places him before the legal profession in the light of contending for the modification of a decree on appeal, in an action to recover money based on such decree, when, in fact, his sole contention was, and is, that the decree as rendered by the trial court should be sustained."

The complaint refers to what is said in the opinion concerning counsel's statement contained in the original brief in reference to the history of the litigation leading up to the original decree, and to what is said with reference to modifying or amending a decree by construction. Counsel insist they did not urge the inherent equities as a reason why the decree should be construed in accordance with their contentions. If there is anything in the opinion which places counsel in such an attitude, it was not intended. In this court the member writing the opinion enjoys the liberty of stating in his own way the reasons that inmpel the conclusions arrived at by the court; that is, he uses his own language in stating the reasons. The writer, therefore, alone is responsible for what is said in the opinion upon the subject complained of. He has many times been reminded of the fact that his reasons are not always expressed in the best possible terms. What is said sometimes is not entirely invulnerable to criticism. In this instance, however, he is not conscious of having transgressed

against counsel. Counsel, in their original brief, devoted twenty-one printed pages to the history and circumstances of the litigation. At the hearing they requested extra time to orally argue that phase of the case. The writer, therefore, was betrayed into assuming that counsel desired to make it appear that, in view of all the facts and circumstances, their construction of the decree was both equitable and just to all. What the writer understood counsel to contend for in that regard was that, where a judgment or decree is ambiguous or doubtful, courts will look to the whole proceedings, and will incline to that construction which will reflect justice and equity to all the parties, rather than to give such a construction as would lead to a contrary result. Moreover, what was said was merely advanced as an argument, and not in criticism of anything that counsel either said or contended for. The writer has no desire, and he is certain the court has none, to misstate, much less to misrepresent, counsel's attitude or contentions in any case.

No reason is perceived why the decree should be modified, and it is therefore adhered to, and the petition is denied.

McCARTY, CORFMAN, and GIDEON, JJ., and STEPHENS, District Judge, concur.