**BOUNDARY COUNTY, IDAHO, et al. v. WOLDSON.**

District Court, D. Idaho, N. D.
March 25, 1943.

W. J. Nixon and O. C. Wilson, both of Bonners Ferry, Idaho, for plaintiff.

Whitla and Knudson, of Coeur d'Alene, Idaho, for defendant.

SCHWELLENBACH, District Judge.

This is an action in which Boundary County, Idaho, and its present commissioners sue the defendant for $49,232.63 with interest or, in the alternative, that certain tax deeds executed by plaintiffs' officers on December 30, 1938, be set aside and that the defendant be required to account for proceeds received by him from the use of the real estate described in such tax deeds. The litigation of which this is an outgrowth has been the subject of controversy in the Idaho courts for many years. To attempt even briefly to describe the issues which have previously been litigated between this plaintiff, its various elective officials, and the Commissioners of Drainage District No. 1 of Boundary County on the one side and this defendant on the other would serve only to confuse the questions of the real issues in this case. It is to be hoped that this litigation, at least, may be viewed as the end of the beginning of the controversies between these parties.

The case which next preceded this one and out of which it directly grew was one in which Woldson was plaintiff and the then commissioners of Boundary County and of the Drainage District were defendants. The necessity for that litigation arose because of the unwillingness of the defendants therein named to follow the directions of the Idaho court previously given to complete a tax sale and to accept the bid of Woldson tendered at that sale. The Findings of Fact, Conclusions of Law and Judgment and Decree in that case were signed December 24, 1938. In the judgment there was listed a description of the various pieces of real estate involved and the amounts bid for them respectively. The judgment provided "upon the plaintiff making payment to the said defendants or to the Treasurer of Boundary County, Idaho, for said property the amount of said payment either in cash *or its equivalent, provided, however, that the amount due to Boundary County, Idaho, for state and county taxes shall be paid in cash.* * * * That the defendant commissioners of Boundary County, Idaho, * * * forthwith convene in session and * * * issue and * * * make, execute and deliver to the plaintiff good and sufficient deeds and conveyances to the property." (Emphasis mine.) The judgment further provided: "It is further ordered that the County Commissioners of Boundary County, Idaho, shall give to the plaintiff notice when said commissioners' deed will be ready for delivery to him and that the plaintiff, within five days thereafter, shall make payment to the said County Commissioners or to the County Treasurer of Boundary County, Idaho, therefor." The clerk of the court who also was clerk of the Board of County Commissioners issued a writ of mandate which did not include any reference to the manner of payment. Nevertheless the judgment was accepted by the Commissioners of the County and the Drainage District and in a few days they notified Woldson that, upon the payment by him of $22,811.33 in cash for the state and county taxes and the delivery by him of bonds, interest coupons and warrants in the amount of $49,232.63 for the District charges, they would cause to be executed and delivered deeds to the property described in the judgment. On December 30, 1938, in conformity with the judgment, the County Commissioners of plaintiff caused deeds to the property to be executed and accepted in payment therefor $22,811.33 in cash and $49,232.63 in

bonds, bond interest coupons and warrants of Drainage District No. 1 of Boundary County, Idaho. No appeal was taken from the judgment, possession of the land was given to Woldson, drainage district assessments were levied against the property and paid by Woldson in the amount of $16,250.-90 and taxes were levied against the property and paid by Woldson in the amount of $55,580.09. Thereafter, on March 8, 1941, with the induction into office of two new county commissioners, this action was commenced. Woldson here has answered denying certain of the allegations of plaintiffs' complaint, pleading the prior judgment and setting forth a voluminous cross-complaint in which he seeks judgment in the amount of $75,000. This case came on for trial before Judge Cavanah, who was judge of this court. He filed his opinion herein on June 15, 1942. In that opinion, Judge Cavanah decided that there was no legal authority given to the Idaho court to approve the payment in "cash or its equivalent." Judge Cavanah, after considering the Idaho statutes, concluded such a sale could only be consummated by the payment in cash and that the words "or its equivalent" should be treated as surplusage and void. The conclusion which Judge Cavanah reached in his opinion was that Woldson should be compelled to execute deeds disclaiming any interests in the lands to the county "within thirty days and failing to do so the Clerk of this Court as Commissioner shall execute and deliver such deeds to the County and the attempted cancellation of the bonds delivered by the defendant to the County should be set aside and the bonds and bond interest coupons be returned to him uncancelled as the parties are still in the same situation as they were in prior to the attempted sale and that an accounting be had as to whatever amounts the defendant has paid out on said attempted sale and subsequent taxes and earnings of the defendant, if any, performing operations of the lands and after the accounting is had the court will then determine the rights and liabilities of the parties." No Findings of Fact, Conclusions of Law or Judgment or Decree were ever entered by Judge Cavanah. On June 15, 1942, simultaneously with the filing of his opinion, Judge Cavanah entered an order directing that an accounting he had within sixty days commencing not later than the 15th day of July, 1942, before a commissioner to be selected by the parties. The parties stipulated that one H. F. Minster should act

as commissioner and, accordingly, on June 29, 1942, Judge Cavanah appointed him as commissioner. The hearing on the accounting then proceeded. While that was being conducted and on July 28, 1942, the clerk of the District Court of Boundary County, Idaho, who is ex officio auditor, recorder and clerk of the County Commissioners of Boundary County, filed an affidavit to the effect that defendant had not executed or delivered to the plaintiff any of the deeds to the property mentioned in the complaint despite the fact that more than thirty days had elapsed since the filing of the court's opinion. Thereupon, on July 28, 1942, Judge Cavanah signed an order directing the clerk of this court, as Commissioner, to execute deeds to the property involved to the plaintiff. That order was entered ex parte without notice to the defendant or his attorneys. The clerk of this court executed the deeds as directed.

This case originally came before me sitting under assignment in this court on a motion to set aside Judge Cavanah's order of July 28, 1942. Plaintiffs' counsel confessed the motion. He agreed that the opinion itself was not sufficient authority upon which to base the order. He admitted the necessity for Findings of Fact, Conclusions of Law, Judgment and Decree. Thereupon, discussion arose as to the procedure to be followed in order to proceed with the entry of Findings of Fact, Conclusions of Law and Judgment or Decree. It was agreed that the entire matter be submitted to me and the necessity of making available to me the testimony introduced at the trial was recognized by both sides. Thereafter, the testimony was reduced to writing. I considered it and all of the pleadings and exhibits in the case and arguments and briefs were presented upon all of the merits of the controversy.

The embarrassment involved in this situation is obvious. My high regard for Judge Cavanah naturally persuades me that I should accept his opinion if such a course is possible. Plaintiffs' counsel urges that I am bound by Judge Cavanah's opinion. With that argument I cannot agree. The responsibility for the decision rests with me. Unfortunately, my conclusions concerning it are not in accord with those of Judge Cavanah. It may well be, in the event of an appeal, that the Appellate Court would accept Judge Cavanah's opinion rather than mine. In order that it may have full advantage of Judge Cavanah's opinion, I will direct that the record on appeal should include such opinion. However, I have been forced regretfully to reach a conclusion different from that at which Judge Cavanah arrived and I must follow that conclusion despite my dislike for that course of action.

In this case, plaintiffs seek collaterally to attack a judgment of the court of the State of Idaho. No appeal having been taken from that judgment, it was final and binding. The plaintiff's duly elected County Commissioners were parties to that suit in the State Court. Consequently, it was binding upon plaintiff Boundary County. Sec. 30-719, Idaho Code Annotated, Board of Commissioners v. Bassett, 14 Idaho 324, 93 P. 774. The court had jurisdiction over the parties to and the subject matter of that action. Stoll v. Gottlieb, 305 U.S. 165, 172 et seq., 59 S.Ct. 134, 83 L.Ed. 104. The Idaho court judgment is res judicata and can not collaterally be attacked in this court. Sunshine Mining Company v. Treinies, D.C., 19 F.Supp. 587; Treinies et al. v. Sunshine Mining Company, 9 Cir., 99 F.2d 651, affirmed Treinies v. Sunshine Mining Company, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. What Judge Cavanah said in that case (19 F.Supp. 587, 594) is peculiarly pertinent here. "Public policy dictates that there be an end of litigation, and especially where the parties have contested an issue in a court having first jurisdiction. This thought is forcibly expressed by Mr. Justice Roberts in the case of Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L. Ed. 1244, where it is said: 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.'" When the Treinies case reached the Supreme Court (308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85) Mr. Justice Reed succinctly stated the rule: "One trial of an issue is enough. 'The principles of res judicata apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties." If the Idaho court committed error in including the words "or its equivalent" in the judgment,

that error should have been corrected by appeal and not by a separate action collaterally attacking it. The correctness of that conclusion was demonstrated by the Circuit Court in Treinies v. Sunshine Mining Company, 9 Cir., 99 F.2d 651, 655, when Judge Mathews used this language: "Whether the issues determined by the Idaho decree were rightly or wrongly determined, is no longer open to inquiry. Having been rendered by a court which had jurisdiction to render it, and having long since become final, that decree, even though erroneous, is valid and conclusive on the parties thereto and all persons claiming under them. Roche v. McDonald, 275 U.S. 449, 454, 48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141." This court has no right to disregard the language of the Idaho judgment. A judgment or decree must be construed as a whole so as to give effect to every word and part. 34 C.J. 501, para. 794; Salt Lake City et al. v. Salt Lake City Water & Electrical Power Company, 54 Utah 10, 174 P. 1134, p. 1138. The fact that the words "or its equivalent" were used purposefully is demonstrated by the proviso requiring that the taxes should be paid in cash. The fact that all the parties understood that the words "or its equivalent" meant bonds, interest coupons and warrants is demonstrated by the fact that they were what were demanded by the County Commissioners at the meeting of December 30, 1938. The mere fact that the Idaho court may have committed error by the inclusion of such language does not detract from the force or the finality of the decree.

 Furthermore, these plaintiffs are estopped to seek the relief for which they pray in this action. The plaintiff county, through its Commissioners, failed to challenge the language of the judgment of December 24, 1938, either by motion for its correction by the court which entered it or by appeal. The evidence is undisputed that the transaction of December 30, 1938, was at the instigation of plaintiff's officials. The defendant had a right to rely and did rely upon the conduct of plaintiff when he paid $22,811.33 taxes and delivered for cancellation the $49,232.63 worth of bonds. He had no reason to believe that a change in control of the county would result in the attempted change of position on the part of the county. The evidence is undisputed that, after Woldson received deeds to the property, the county collected from him a total of $55,580.09 taxes, the Drainage District collected from him, in 1939, $16,-

250.90 in drainage district assessments. He was required to spend $1,000 in order to defeat certain homestead claims in the office of the Commissioner of Public Lands in Washington, D. C. Believing that he was the owner of this property, he sold a portion of it and faces the possibility of a damage action by his purchaser in the event his title was invalid. This case clearly comes within the rule laid down in James v. Nelson, 9 Cir., 90 F.2d 910, 917, certiorari denied, 302 U.S. 721, 58 S.Ct. 41, 82 L.Ed. 556. In that case, the grantor sued the grantee and the lessees of the grantee. The grantor was advised of the deed and knew and allowed the lessee to go upon the land and expend money for improvements. In invoking the doctrine of estoppel against the grantor, the Circuit Court of Appeals for the Ninth Circuit used the following language:

"They are also defeated as the result of estoppel in pais, or estoppel by conduct.

"The elements of this latter type of estoppel are well stated in Nelson v. Chicago Mill & Lumber Corporation [8 Cir.], 76 F.2d 17, 21, 100 A.L.R. 87: 'The essential elements of estoppel, as applicable in this case, are: (1) Ignorance of the party claiming estoppel of the matter asserted; (2) silence concerning matter where there is a duty to speak amounting to misrepresentation or concealment of a material fact; (3) action by the party relying on the misrepresentation or concealment; and (4) damages resulting if the estoppel is denied. (Many cases cited).'

"In more trenchant language, in Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618, the Supreme Court thus expounded the doctrine: 'The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice.'

"Again, in Gregg v. Von Phul, 1 Wall. 274, 68 U.S. 274, 281, 17 L.Ed. 536, the court said: 'The doctrine of estoppels in pais, or by the act of the party, is founded in natural justice, "and is a principle of good morals as well as law." "The primary

ground of the doctrine is, that it would be fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted." (Cases cited.) No one is permitted to keep silent when he should speak, and thereby mislead another to his injury. If one has a claim against an estate and does not disclose it, but stands by and suffers the estate sold and improved, with knowledge that the title has been mistaken, he will not be allowed afterwards to assert his claim against the purchaser. And justly so, because the effect of his silence has actually misled and worked harm to the purchaser. And in this case the silence of Gregg concludes him.' See, also, Pacific Mill & Mining Co. v. Leete [9 Cir.], 94 F. 968, 975; 21 C.J. 1059–1062; Mascarel v. Mascarel's Ex'rs, 3 Cal. App. 501, 86 P. 617, 618; Mills v. Rossiter Co., 156 Cal. 167, 103 P. 896, 897; Bigelow on Estoppel (6th Ed.) ch. xviii, pp. 602–716; California Packing Corporation v. Sun-Maid R. Growers [9 Cir.], 81 F.2d 674, 679, certiorari denied 298 U.S. 668, 56 S.Ct. 833, 80 L.Ed. 1391."

Even stronger language was used by the Circuit Court of Appeals in Pacific Mill & Mining Co. v. Leete, 9 Cir., 94 F. 968, 974: "Having allowed the defendant in error to act upon the understanding had by both parties, the plaintiff in error cannot now deny that understanding, to the loss or injury of the defendant in error. Storrs v. Barker, 6 Johns. Ch. [N.Y.] 166 [10 Am. Dec. 316]; Mississippi Coal & Ice Co. v. The Ottumwa Belle, [D. C.] 78 F. 643; Illinois Trust & Savings Bank v. City of Arkansas City [8 Cir.], 76 F. 271, 22 C.C. A. 171, 40 U.S.App. 257 [34 L.R.A. 518]; Smiley v. Barker [9 Cir.], 83 F. 684, 28 C.C.A. 9, 55 U.S.App. 125; Markham v. O'Connor, 52 Ga. 183 [21 Am.Rep. 249]; Cunningham v. Patrick, 136 Mo. 621, 37 S.W. 817. 'The vital principle (of estoppel in pais) is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both.' Dickerson v. Colgrove, 100 U.S. 578 [25 L.Ed. 618]; Fetter, Eq. §§ 21, 22. 'Equitable estoppel, in the modern sense, arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything.

Its foundation is justice and good conscience.' 2 Pom.Eq.Jur. § 802. 'The doctrine seems to be established by authority that the conduct and admissions of a party operate against him in the nature of an estoppel, wherever, in good conscience and honest dealing, he ought not to be permitted to gainsay them. Thus negligence becomes constructive fraud, although, strictly speaking, the actual intention to mislead or deceive may be wanting, and the party may be innocent, if innocence and negligence may be deemed compatible. In such cases the maxim is justly applied to him that, when one of two innocent persons must suffer, he shall suffer who by his own acts occasioned the confidence and loss.' Stevens v. Dennett, 51 N.H. 324."

Plaintiff's contention is that the doctrine of estoppel should not apply here because the plaintiff was acting as trustee for the drainage district. That contention is fully answered by the case of James v. Nelson, supra, where the doctrine was invoked against cestuis que trust because of their knowledge of the acts of their trustee. It must be remembered that the commissioners of the drainage district were parties to the state court action and had the same right to appeal therefrom as did the commissioners of the county. Furthermore, in 1939, the drainage district collected $16,250.90 assessments from the defendant. The commissioners of the drainage district acquiesced in and the drainage district accepted the benefits of the transaction of December 30, 1938. Since estoppel would apply to the drainage district were it a party to the action, it avails these plaintiffs nothing to contend that the relationship of the county in the transaction was purely that of a trustee.

For the foregoing two reasons, I am convinced that the action of plaintiff must be dismissed.

■ In so far as the arguments presented to me are concerned, defendant has not seriously pressed his cross-complaint. Most of the matters raised therein could have been raised in the previous actions in the state court. Furthermore, the nature of the proof presented on the cross-complaint is not such as to justify the entry of a judgment thereon. For these reasons, defendant's cross-complaint also will be dismissed.

The judgment of dismissal must also contain an order setting aside the order of July 28, 1942, and a decree setting aside

the action of the clerk of this court as commissioner acting in compliance with that order.