TREINIES *v.* SUNSHINE MINING CO. ET AL.

No. 4. Argued October 10, 1939.—Decided November 6, 1939.

*Mr. Thomas D. Aitken* for petitioner.

*Mr. C. W. Halverson,* with whom *Mr. Nat U. Brown* was on the brief, for the Sunshine Mining Co., respondent.

*Mr. Richard S. Munter,* with whom *Mr. Lester S. Harrison* was on the brief, for Katherine Mason et al., respondents.

MR. JUSTICE REED delivered the opinion of the Court.

This writ of certiorari was granted to review the action of the Court of Appeals for the Ninth Circuit in affirming [1] a decree of the District Court of Idaho [2] upon a bill

[1] 99 F. 2d 651.

[2] 19 F. Supp. 587.

of interpleader filed by the Sunshine Mining Company, a Washington corporation, against Evelyn H. Treinies and other citizens of the State of Washington, claimants to certain stock of the Sunshine Mining Company and the dividends therefrom, and Katherine Mason and T. R. Mason, her husband, and other citizens of the State of Idaho, adverse claimants to the same stock and dividends.

The occasion for the interpleader was the existence of inconsistent judgments as to the ownership of the Sunshine stock. The Superior Court of Spokane County, Washington, in administering the estate of Amelia Pelkes, adjudged that it was the property of John Pelkes, assignor of petitioner, Evelyn H. Treinies; and the District Court of Shoshone County, Idaho, adjudged that the same property belonged to respondent, Katherine Mason. They are the sole disputants. Other parties may be disregarded. On account of conflict between the judgments of the respective courts of sister states and the assertion of the failure to give full faith and credit to both in the interpleader action, we granted certiorari.

The alleged rights of the respective claimants arose as follows: Amelia Pelkes, the wife of John Pelkes, died testate in Spokane, Washington, in 1922, leaving her husband and one child, Katherine Mason, the offspring of a former marriage, as the beneficiaries of her will. As a part of her community estate, there were 30,598 shares of Sunshine Mining stock. It was considered valueless and was not inventoried or appraised. The order of distribution assigned a three-fourths undivided interest in these shares to Pelkes and a one-fourth to Mrs. Mason, an omnibus clause covering unknown property. The estate of Mrs. Pelkes was not distributed according to the order of distribution. Instead Pelkes and his stepdaughter, Mrs. Mason, divided the inventoried

property between themselves in accordance with their wishes.

It is the contention of Pelkes and his assignee that this partition of the property was in consideration of the release by Mrs. Mason to Pelkes of all of her interest in the shares of the stock of the Sunshine Mining Company. On the other hand, Mrs. Mason asserts that Pelkes was to hold one-half of the amount owned, 15,299 shares, in trust for her.

In August, 1934, Mrs. Mason instituted a suit in the District Court of Idaho for Shoshone County against Pelkes, Evelyn H. Treinies, the Sunshine Mining Company, and others not important here, alleging that she was the owner of 15,299 shares of the stock, that these had been acquired by Miss Treinies from Pelkes with knowledge of Mrs. Mason's rights, and praying that the trust be established and the stock and dividends be awarded to her, Mrs. Mason. It was finally decreed by the District Court on August 18, 1936, after an appeal to the Supreme Court of Idaho,[3] that the stock and dividends belonged to Mrs. Mason. Certiorari to the Supreme Court of Idaho was refused by this Court.[4]

Before the entry of the first decree of the District Court of Idaho, Katherine Mason filed a petition in the Superior Court of Spokane County, Washington, in the probate proceedings involving Amelia Pelkes' will, to remove the executor, John Pelkes, for failure to file his report of distribution and for dissipation of the Sunshine stock. Pelkes by cross-petition and petition claimed the stock. Thereupon Mrs. Mason applied to the Supreme Court of Washington for a writ of prohibition against further proceedings in the Superior Court on the ground

---

[3] 57 Idaho 10; 59 P. 2d 1087.
[4] *Pelkes* v. *Mason*, 299 U. S. 615.

of lack of jurisdiction in that court to determine the controversy over the stock. The writ was refused. On May 31, 1935, a judgment was entered in the Superior Court upholding in full the ownership of Pelkes.

After the Supreme Court of Idaho had decided the Idaho suit against Pelkes and Miss Treinies, they filed in August, 1936, a suit in the Superior Court of Washington against Katherine Mason and others alleging that they were the owners of the stock, further alleging that the Idaho decree was invalid for lack of jurisdiction, and asking that their title to the stock be quieted and the Sunshine Mining Company, a party to this and the Idaho suit, be compelled to recognize their ownership. It was at this point in the litigation that the Sunshine Company filed the bill of interpleader now under consideration. Further proceedings in the suit to quiet title were enjoined by the District Court in this action.

*Jurisdiction.*—Before considering the questions raised by the petition for certiorari, the jurisdiction of the federal court under the Act of January 20, 1936,[5] must be determined. As this issue affects the jurisdiction of this Court, it is raised on its own motion.[6] By the Act of January 20, 1936, the district courts have jurisdiction of suits in equity, interpleading two or more adverse claimants, instituted by complainants who have property of the requisite value claimed by citizens of different states. The suit may be maintained "although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another." Process may run at least throughout all the states.

As required by the Act this case was begun by the complainant, a corporation of the State of Washington, im-

---

[5] 49 Stat. 1096, 28 U. S. C. § 41 (26).

[6] *Mansfield, C. & L. M. Ry. Co.* v. *Swan*, 111 U. S. 379, 384.

pleading one group of claimants who are citizens of that same state and another, the adverse group, who are citizens of Idaho. Under the Interpleader Act, this iden-. tity of citizenship is permissible since diversity only between claimants is required. The Interpleader Act is based upon the clause of § 2, Article III, of the Constitution which extends the judical power of the United States to controversies "between. citizens of different States." Is this grant of jurisdiction broad enough to cover the present situation?

The Judicial Code, § 24, provides for original jurisdiction of suits of a civil nature between citizens of different states in precisely the language of the Constitution. The present wording is practically the same as that. of the Act of March 3, 1875,[7] "the circuit courts . . . shall have original cognizance . . . of all suits . . . in which there shall be a controversy between citizens of different States," and that of the original Judiciary Act of September 24, 1789,[8] "the suit is between a citizen of the State where the suit is brought and a citizen of another State." Without ruling as to possible limitations of the constitutional grant, it is held by this Court that the statutory language of the respective judiciary acts forbids suits in the federal courts unless all the parties on one side are of citizenship diverse to those on the other side.[9] For the determination of the validity of the Interpleader Act we need not decide whether the words of the Constitution, "Controversies . . . between Citizens of different States," have a different meaning from that given by judicial construction to similar words in the Judiciary Act. Even though the constitutional language limits the

---

[7] 18 Stat. 470.

[8] 1 Stat. 78.

[9] *Strawbridge* v. *Curtiss*, 3 Cranch 267; *Camp* v. *Gress*, 250 U. S. 308, 312.

judicial power to controversies wholly between citizens of different states, that requirement is satisfied here.[10]

This is for the reason that there is a real controversy between the adverse claimants. They are brought into the court by the complainant stakeholder who simultaneously deposits the money or property, due and involved in the dispute, into the registry of the court. This was done in this case. The Act provides that the "court shall hear and determine the cause and shall discharge the complainant from further liability." Such deposit and discharge effectually demonstrates the applicant's disinterestedness as between the claimants and as to the property in dispute,[11] an essential in interpleaders.[12] The complainant is a proper party for the determination of the controversy between the adverse claimants, citizens of different states. Their controversy could have been settled by litigation between them in the federal courts. Under similar circumstances as to parties, this Court ruled that a removal of separable controversies to the federal court was permissible even though a proper defendant was a citizen of the same state as the plaintiff.[13] We so held as to a stakeholder in *Salem Co.* v. *Manufacturers' Co.*[14] There a suit was brought in a state court against the Manufacturers' Company, a Delaware cor-

---

[10] Cf. Chafee, Interpleader in the United States Courts, 41 Yale L. J. 1134, 1141, 1165; and Chafee, The Federal Interpleader Act of 1936, 45 Yale L. J. 963, 973.

[11] Diversity requirements for federal equity jurisdiction to avoid a multiplicity of suits from diverse claimants with claims contested by the debtor is not involved. Cf. *Di Giovanni* v. *Camden Ins. Assn.*, 296 U. S. 64, 70.

[12] *Sanders* v. *Fertilizer Works*, 292 U. S. 190, 200; *Killian* v. *Ebbinghaus*, 110 U. S. 568, 571.

[13] *Barney* v. *Latham*, 103 U. S. 205, 213; cf. *Pullman Co.* v. *Jenkins*, 305 U. S. 534, 538.

[14] 264 U. S. 182, 189.

poration, and against a co-citizen of plaintiff, a Massachusetts corporation, the International Trust Company. The Manufacturers' Company removed and plaintiff sought a remand alleging its co-citizen was a necessary party. The suit was to determine rights to a fund in the co-citizen's hands "and to have the same paid to" the plaintiff. The right of removal was upheld on the ground that the only obligation of the stakeholder was to pay over the money deposited with it. In *Cramer* v. *Phoenix Mut. Life Ins. Co.*[15] the Circuit Court of Appeals for the Eighth Circuit, considering that the claimants were the real contestants, construed the Interpleader Act of May 8th, 1926,[16] to give jurisdiction to the federal court although the interpleader and certain claimants were citizens of the same state. The language as to citizenship is the same as that of the act here involved.[17]

*Application of Interpleader Act.*—The inclusion as defendants of the judge of the Superior Court of Washington, the administrator of John Pelkes, and a court receiver of the property in dispute is said to violate the

---

[15] 91 F. 2d 141, 146. See also *Mutual Life Ins. Co.* v. *Lott*, 275 F. 365, 372 (S. D. Cal.); *New York Life Ins. Co.* v. *Cross*, 7 F. Supp. 130 (S. D. N. Y.); cf. *Eagle, Star and British Dominions* v. *Tadlock*, 14 F. Supp. 933 (S. D. Cal.), reversed, 91 F. 2d 481 (C. C. A. 9); *Ackerman* v. *Tobin*, 22 F. 2d 541 (C. C. A. 8).

[16] 44 Stat. 416.

[17] We do not determine whether the ruling here is inconsistent with the conclusion in those cases where jurisdiction was rested on diversity of citizenship between the applicant and co-citizens who are claimants. (*Mallers* v. *Equitable Life Assur. Soc.*, 87 F. 2d 233 (C. C. A. 7), cert. denied, 301 U. S. 685 (New York corporation impleads Illinois claimants); *Security Trust & Savings Bank* v. *Walsh*, 91 F. 2d 481 (C. C. A. 9) (English corporation impleads California claimants); *Penn Mut. Life Ins. Co.* v. *Meguire*, 13 F. Supp. 967, 971 (W. D. Ky.) (Pennsylvania corporation impleads Kentucky claimants); *Turman Oil Co.* v. *Lathrop*, 8 F. Supp 870, 872 (N. D. Okla.) (Delaware corporation impleads Oklahoma claimants).

rule against a citizen suing a state embodied in the Eleventh Amendment.[18]

Without analyzing all the pleadings, a short answer against the petitioner's contention is the fact that neither the receiver nor the judge is enjoined by the final decree. Pelkes' administrator and Miss Treinies are enjoined from further prosecution of the Washington action to quiet title. They are the parties whose individual rights to the stock are settled in this action. The State of Washington has no interest and no infringement, of the Eleventh Amendment occurs.

Neither are the provisions of § 265 of the Judicial Code applicable. That section forbids a United States court from staying proceedings in any state court. The Interpleader Act, passed subsequently, however, authorizes the enjoining of parties to the interpleader from further prosecuting any suit in any state or United States court on account of the property involved. Such authority is essential to the protection of the interpleader jurisdiction and is a valid exercise of the judicial power. Section 265 is a mere limitation upon the general equity powers of the United States courts and may be varied by Congress to meet the requirements of federal litigation.[19]

*Res Judicata of the Idaho Decree.*—On the merits, petitioner's objection to the decree below is that it fails to consider and give effect to the Washington judgment of May 31, 1935, awarding the property in question to Pelkes, petitioner's assignor. · It is petitioner's claim that the Washington judgment must be considered as effective in this litigation because the question of the jurisdiction of the Washington court was actually litigated before

---

[18] *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292, 296, is relied upon.

[19] *Smith* v. *Apple,* 264 U. S. 274, 278; *Dugas* v. *American Surety Co.,* 300 U. S. 414, 428.

the Supreme Court of Washington and determined favorably to petitioner by the refusal to grant a writ of prohibition against the exercise of jurisdiction by the Washington Superior Court in probate. This failure to give effect to the judgment is said to infringe the full faith and credit clause of the Constitution. The decree of the Court of Appeals is based upon the doctrine of *res judicata*. The applicability of that doctrine arises from a determination of pertinent matters by the Supreme Court of Idaho. Accordingly we turn to a discussion of whether or not the issues tendered below by petitioner were foreclosed by the decision of the Supreme Court of Idaho of July 23, 1936.

The issues tendered by petitioner in the trial court in this interpleader proceeding were (1) the invalidity of the Idaho decree, and (2) the conclusiveness of the Washington decree of May 31, 1935, awarding the property to Pelkes. Both of these issues rest on petitioner's contention that complete jurisdiction of the probate of Mrs. Pelkes' estate was in the Superior Court of Washington, that the stock was at all times a part of that estate, and that therefore that court's jurisdiction over the disposition of the stock was exclusive of all other courts.

The Idaho decree was pleaded in this proceeding as *res judicata* of the controversy between petitioner and respondent. The proceedings in Idaho showed a cause of action based on an alleged oral agreement of Pelkes, made in Idaho at the time of distribution of Mrs. Pelkes' estate, to hold the Sunshine Mining Company stock in trust for the joint benefit of himself and Mrs. Mason. All parties, including this petitioner, were before the court and a decree was entered sustaining the trust and awarding the stock and dividends, as claimed, to respondent, Mrs. Mason, with directions to the Mining Company to recognize the assignment of the certificates and adjudging a re-

covery for prior dividends against Pelkes and petitioner. The Idaho court was a court of general jurisdiction.[20]

The Court of Appeals held that the Idaho suit settled that the stock was distributed in 1923 and that therefore the Idaho court had jurisdiction to determine rights under the .alleged oral trust. It was further of the view that the Idaho court's invalidation of the Washington judgment and its decree upholding Mrs. Mason's claim to the disputed property were *res judicata* in this action. Petitioner's only ground for objection to the conclusion that the Idaho decree is *res judicata* rests on the argument that by such ruling below the "judgment of the courts of the State of Washington affecting the same subject matter and parties" is ignored.

In the Idaho proceeding the Washington judgment awarding the stock and dividends to Pelkes was pleaded in bar to Mrs. Mason's suit to recover the stock. The effectiveness of the Washington judgment as a bar depended upon whether the court which rendered it had jurisdiction, after an order of distribution, to deal with settlements of distributees with respect to the assets of an estate. On consideration it was determined in the Idaho proceeding that the Washington court did not have this jurisdiction and that the stock of the Mining Company became the property of Mrs. Mason. In declining to give effect to the Washington decree for lack of jurisdiction over the subject matter, the Idaho court determined also the basic question raised by petitioner in the interpleader action. The contention of petitioner in the interpleader proceedings that the Idaho court did not have jurisdiction of the stock controversy because that controversy was in the exclusive jurisdiction of the Washington probate court must fall, because of the Idaho decision that the Washington probate court did not have

---

[20] Constitution of Idaho, Art. 5, § 20; Idaho Code, 1932, § 1-705.

exclusive jurisdiction. This is true even though the question of the Washington jurisdiction had been actually litigated and decided in favor of Pelkes in the Washington proceedings. If decided erroneously in the Idaho proceedings, the right to review that error was in those (the Idaho) proceedings. While petitioner sought review from the decree of the Supreme Court of Idaho by petition for certiorari to this Court, which was denied, no review was sought from the final decree of the Idaho District Court of August 18, 1936, on new findings of fact and conclusions of law on remittitur from the Supreme Court of Idaho.[21]

---

[21] It is unnecessary to consider whether the Idaho determination as to the jurisdiction of the Washington court was properly made. As the procedure by which a state court examines into the question of the jurisdiction of the court of a sister state is a matter within the control of the respective states (*Adam* v. *Saenger*, 303 U. S. 59, 63), it need only be added that such procedure is subject to question only on direct appeal.

It was stipulated by all parties to the Idaho cause that the Idaho courts might take judicial notice of the statutes and decisions of Washington. Some constitutional and statutory provisions relating to the jurisdiction of the Superior Court were pleaded and admitted. It has long been the rule in Idaho that its courts do not take judicial notice of the laws of another state and that without allegation and evidence it will be assumed the laws are the same as those of Idaho. (*Maloney* v. *Winston Bros. Co.*, 18 Idaho 740, 757, 762; 111 P. 1080, 1086; *Douglas* v. *Douglas*, 22 Idaho 336, 343; 125 P. 796; *Mechanics & Metals Nat. Bank* v. *Pingree*, 40 Idaho 118, 129; 232 P. 5; *State* v. *Martinez*, 43 Idaho 180, 192; 59 P. 2d 1087; *Kleinschmidt* v. *Scribner*, 54 Idaho 185, 189; 30 P. 2d 362). While none of these cases involved a stipulation, the decision of the Supreme Court of Idaho (57 Idaho 10; 59 P. 2d 1087) declares the law of that jurisdiction. It follows from the Idaho court's refusal to look into the statutes of Washington that the jurisdiction of the Washington court was presumed to be governed by Idaho law. Under proper proof, the Idaho court would have been compelled to examine the jurisdiction of the Washington court under Washington law.

78

The Court of Appeals correctly determined that the issue of jurisdiction *vel non* of the Washington court could not be relitigated in this interpleader. As the Idaho District Court was a court of general jurisdiction, its conclusions are unassailable collaterally except for fraud or lack of jurisdiction. The holding by the Idaho court of no jurisdiction in Washington necessarily determined the question raised here as to the Idaho jurisdiction against Miss Treinies' contention. She is bound by that judgment.

The power of the Idaho court to examine into the jurisdiction of the Washington court is beyond question.[22] Even where the decision against the validity of the original judgment is erroneous, it is a valid exercise of judicial power by the second court.[23]

One trial of an issue is enough.[24] "The principles of *res judicata* apply to questions of jurisdiction as well as to other issues,"[25] as well to jurisdiction of the subject matter as of the parties.[26]

*Decree affirmed.*

Mr. Justice Butler took no part in the consideration or decision of this case.

---

[22] *Old Wayne Life Assn.* v. *McDonough,* 204 U. S. 8, 15; *Thompson* v. *Whitman,* 18 Wall. 457, 468; *Adam* v. *Saenger,* 303 U. S. 59, 62.

[23] *Chicago Life Ins. Co.* v. *Cherry,* 244 U. S. 25, 30; *Stoll* v. *Gottlieb,* 305 U. S. 165, 172; *Roche* v. *McDonald,* 275 U. S. 449, 454.

[24] *Baldwin* v. *Traveling Men's Assn.,* 283 U. S. 522, 525.

[25] *American Surety Co.* v. *Baldwin,* 287 U. S. 156, 166.

[26] *Stoll* v. *Gottlieb, supra,* note 23, 172.

No decision or statute relative to the reëxamination of the decree or judgment of an Idaho court on a contested issue of jurisdiction has been found or called to our attention. It is concluded that the rule here expressed states too the law of Idaho.