## ARIZONA POWER CORPORATION et al. v. SMITH.

### No. 9644.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1941.

O'Sullivan & Morgan, J. H. Morgan, and T. J. Byrne, all of Prescott, Ariz., for appellants.

Ross F. Jones and Allan K. Perry, both of Phoenix, Ariz., and W. E. Patterson and I. Eastvold, both of Prescott, Ariz., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment which, in an action by appellee, M. R. Smith, against appellants, The Arizona Power Corporation and Arizona Mining Supply Corporation,[1] for conversion of personal property and injury to real property owned by appellee, awarded damages to appellee in the sum of $12,741.75, with interest and costs.

On May 17, 1935, Davis-Dunkirk Mines, Inc., hereafter called Davis-Dunkirk, leased to A. P. Gagge certain real property (eight patented and fourteen unpatented mining claims), hereafter called the Davis-Dunkirk real property, in Yavapai County, Arizona, and certain personal property (mining materials, equipment, machinery, tools and accessories), hereafter called the Davis-Dunkirk personal property, situate on and used in connection with the Davis-Dunkirk real property. On May 31, 1935, Gagge assigned the lease to Bradshaw Mines, Inc., hereafter called Bradshaw. Thereafter, prior to December 27, 1937, Bradshaw placed on the Davis-Dunkirk real property certain personal property (mining materials, equipment, machinery, tools and accessories), hereafter called the Bradshaw property. On December 27,

---

[1] Other defendants were named, but, as to them, the action was dismissed.

1937, Bradshaw was adjudged a bankrupt, and its case was referred to a referee in bankruptcy. A trustee was appointed on January 22, 1938.

On May 2, 1938, the Davis-Dunkirk property, real and personal, was purchased by appellee at a sheriff's sale under an execution issued on a State court judgment theretofore obtained by Francis D. Crable, trustee for The Arizona Power Company, [2] against Davis-Dunkirk. On August 8, 1938, the Bradshaw property was purchased by appellee at a sale made by the trustee in bankruptcy pursuant to an order of the bankruptcy court. On August 12, 1938, August 29, 1938, and September 19, 1938, under executions issued on a State court judgment theretofore obtained by The Arizona Power Corporation (appellant herein) against Bradshaw, the sheriff pretended to sell and the Power Corporation pretended to purchase the Bradshaw property and the Davis-Dunkirk property, real and personal.

This action was commenced on November 15, 1938. The complaint alleged (1) that between August 8, 1938, and November 15, 1938, appellants had "unlawfully seized, converted and sold mining materials, equipment, machinery, tools and accessories belonging to [appellee] and which were situated on the Davis-Dunkirk mining properties in Yavapai County, State of Arizona, all in the sum of $35,000;" and (2) that "the unlawful seizure, conversion, sale and removal of the aforesaid properties as aforesaid from the Davis-Dunkirk mining properties, all of which belonged to [appellee], damaged the Davis-Dunkirk properties and [appellee] in the sum of $25,000." From a bill of particulars subsequently filed, it appeared that the "mining materials, equipment, machinery, tools and accessories" referred to in the complaint were those herein referred to as the Davis-Dunkirk personal property and the Bradshaw property; and that the "Davis-Dunkirk mining properties" referred to in the complaint were those

herein referred to as the Davis-Dunkirk real property.

Appellants answered, denying all material allegations of the complaint. Jury trial being waived, the case was tried by the court. The court found (1) that "Between August 8, 1938, and November 15, 1938, [appellants] seized, removed and converted to their own use certain personal properties [3] belonging to [appellee], having a then present value of $7,741.75;" and (2) that "The seizure, conversion and removal of such personalty resulted in damage to [appellee's] realty [4] in the sum of $5,000." The court concluded that appellee was "entitled to judgment against [appellants], and each of them, under his first cause of action [5] in the sum of $7,741.75, and under his second cause of action in the sum of $5,000." Judgment for the sums mentioned—a total of $12,741.75—was accordingly entered. This appeal followed.

There is no evidence that appellants seized, removed or converted any property prior to August 12, 1938. Appellants say they never converted any property at any time. They admit that between August 12, 1938, and November 15, 1938, they removed portions of the Bradshaw and Davis-Dunkirk personal property from the Davis-Dunkirk real property, but that, they say, was not a conversion; for at that time, according to appellants, the Bradshaw property and the Davis-Dunkirk property, real and personal, belonged, not to appellee, but to the Power Corporation, having been acquired by the Power Corporation at the sales which the sheriff pretended to make on August 12, 1938, August 29, 1938, and September 19, 1938, under executions issued on the Power Corporation's judgment against Bradshaw.

Under these executions, the sheriff could sell and the Power Corporation could purchase only such right, title and interest as Bradshaw had at the time of the pretended sales. Bradshaw did not, at the

---

[2] Not to be confused with The Arizona Power Corporation, appellant herein.

[3] From other findings which the court made and from the whole record, it is apparent that the "personal properties" referred to in the findings were portions of the Davis-Dunkirk personal property and of the Bradshaw property.

[4] From other findings which the court made and from the whole record, it is

apparent that the "realty" referred to in the findings was the Davis-Dunkirk real property.

[5] Appellee's claim for damages for conversion of personal property and his claim for damages for injury to real property were treated below, and hence are treated here, as separate causes of action.

890

time of the pretended sales or any thereof, have any right, title or interest in or to the Bradshaw property or the Davis-Dunkirk property; for, as previously stated, appellee had purchased the Davis-Dunkirk property at sheriff's sale on May 2, 1938, and had purchased the Bradshaw property at trustee's sale on August 8, 1938. Hence the Power Corporation acquired nothing by its pretended purchases on August 12, 1938, August 29, 1938, and September 19, 1938.

It is immaterial, if true, that the Power Corporation had a lien on the Davis-Dunkirk property, for no such lien was ever foreclosed or otherwise enforced. It is idle to pretend that the Power Corporation's judgment against Bradshaw foreclosed such a lien, for Davis-Dunkirk, the then owner of the Davis-Dunkirk property, was not a party to the judgment or to the action in which the judgment was obtained.

■ Nor is it material, if true, that the Power Corporation had a lien on the Bradshaw property, for the trustee in bankruptcy was ordered to, and did, sell the Bradshaw property free and clear of liens.[6] The order was valid. Van Huffel v. Harkelrode, 284 U.S. 225, 227, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 583, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Wright v. Vinton Branch, 300 U.S. 440, 470, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; Wright v. Union Central Life Ins. Co., 304 U.S. 502, 517, 58 S.Ct. 1025, 82 L.Ed. 1490.

■ Appellants contend that the bankruptcy court had no jurisdiction to order a sale of the Bradshaw property. The question thus attempted to be raised was raised in the bankruptcy court by a plea which the Power Corporation filed in that court and which that court (the referee presiding) overruled on August 8, 1938. The order overruling the Power Corporation's plea to the bankruptcy court's jurisdiction was not reviewed or sought to be reviewed. Thus, right or wrong, the order became final, and the Power Corporation is concluded thereby. Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 84 L.Ed. 85.

The Supply Corporation's interest, if any, in the Bradshaw property was acquired from the Power Corporation after August 8, 1938. Thus, being in privity with the Power Corporation, it too was precluded from challenging the bankruptcy court's jurisdiction. 19 Am.Jur., Estoppel, § 152.

Appellants complain of the admission of parol evidence tending to show that the Power Corporation submitted itself to the bankruptcy court's jurisdiction and so consented thereto, and of findings and conclusions to that effect. The question thus attempted to be raised need not be considered, for if, as we hold, the bankruptcy court's jurisdiction was not open to challenge in this action, it is immaterial whether the Power Corporation consented to it or not.

We conclude, as did the court below, that the Davis-Dunkirk real property and the personal property which appellants removed therefrom never belonged to appellants or either of them, but belonged to appellee, and that appellants' removal and appropriation of said personal property to their own use constituted a conversion thereof.

■ In Arizona, where this conversion occurred, "The ordinary measure of damages in conversion is the reasonable market value of the goods at the time of conversion, with interest. * * * If the goods have no market value, their actual worth to the owner is the test, and when they have but little or no market value, and are of special value to the owner, he may recover that." Jones v. Stanley, 27 Ariz. 381, 384, 233 P. 598, 599. The court below found that the property converted by appellants had, at the time of such conversion, a value—meaning, we assume, a reasonable market value—of $7,741.75. The finding is amply supported by evidence and will not be disturbed.

The market value shown by the evidence was the market value of the converted property at the place of conversion. Appellants' assertion that the property had no market value at that place is not borne out by the record. We therefore reject their contention that market value at some other place was the proper measure of damages.

■ Appellants complain of the denial of their motion to strike the testimony of appellee's witness, Carl G. Barth, Jr., regarding the value of certain portions of

[6] Except those of the United States, the State of Arizona, Yavapai County and the Arizona Industrial Commission.

the converted property. The motion was as follows: "We, at this time, move to strike all of this witness's testimony, for the reason it cannot possibly aid the court." The witness's testimony occupies 22 pages ·of the printed record. Most if not all of it was clearly admissible. If any part of it was inadmissible, that part alone should have been objected to. Seeking instead to have it all stricken, appellants' motion was properly denied.

■ Appellants complain of the admission of testimony of appellee's witness, H. B. Hopkins, to the effect that one item of the converted property (a Sullivan compressor) had, when attached to the Davis-Dunkirk real property, a market value of from $4,000 to $5,000, and that another item (a quantity of drill steel) had, when situate on the Davis-Dunkirk real property, a reasonable market or cash value of about $500. This testimony was received without objection. Hence its admission cannot be deemed error.

There is no evidence that the Davis-Dunkirk real property was damaged by appellants. The finding that it was so damaged was based on testimony of appellee's expert witness, Harlow D. Phelps. The witness testified that he saw the Davis-Dunkirk real property in 1935 and was at that time familiar with it as an "operating property," but he did not claim to have seen it after 1935. He did not pretend to know of any damage to the property. The testimony on which the finding was based was given in answer to a hypothetical question by appellee's counsel. Before putting the question, counsel showed the witness a list of all the Bradshaw and Davis-Dunkirk personal property, some of which, the evidence shows, never was removed from the Davis-Dunkirk real property. Thereupon the witness was asked to assume (contrary to the evidence) that all the listed property had been removed from the Davis-Dunkirk real property; assume (in accordance with the evidence) that part of the listed property had a market value in excess of $8,000; and, on the basis of these assumptions, partly true and partly untrue, state what, in his opinion, "would be the damage to the mines, as such, by reason of such removal; that is, looking at the mines as an operating property."

The witness did not give the opinion the question called for; that is to say, he did not state what, in his opinion, would be the damage to the "mines" by reason of the removal of the personal property mentioned—probably because there was nothing to indicate that the "mines" had been or would be damaged at all. His answer was as follows: "Well, any removal from a mining property that has been in operation seriously detracts from its sale value. If you want to show it to anyone with the idea of encouraging them to get interested in the property, why, if you tear out the machinery and take away the equipment that was there, where it was an operating company and an operating property, it seriously detracts from a sale value of the property, there is no question about that. As to how much, that is more or less a matter of estimate. I would not state a definite figure as to what that might be, but I think it would be safe to say that the removal of as much as is listed here would at least amount to a minimum of $5,000."

What the witness meant by the terms "removal," "mining property" and "operating property" was not explained. We assume, however, that by the term "removal" he meant removal of personal property only, and that by the terms "mining property" and "operating property" he meant real property only; for, without these assumptions, his testimony could have no possible relevancy. Thus we assume the witness meant to say that "any removal" of personal property from real property which is or has been operated as a mine detracts from the sale value of such real property—which is obviously untrue. Such removals may and frequently do occur without detracting at all from such sale value. The hypothetical question propounded to the witness stated no fact warranting the conclusion that any such detraction occurred in this case.

■ It is clear that the detraction mentioned by the witness was one which he thought had resulted, not from any damage to real property, but from the conversion of personal property. It is equally clear that the sole purpose of the witness's testimony was to enable appellee to recover for such conversion damages other than, and in addition to, those which were legally recoverable. See Jones v. Stanley, supra. In awarding such additional damages, the trial court erred.

So much of the judgment as is based upon appellee's second cause of action— that is to say, so much of the judgment as

awards damages to appellee in the sum of $5,000, with interest thereon—is reversed. In all other respects, the judgment is affirmed.