Thomas L. PRINGLE and Beatrice Pringle, Plaintiffs-Appellants,

v.

STANDARD LIFE & ACCIDENT INSURANCE COMPANY, (New Standard), Standard Life & Accident Insurance Company, (Old Standard), and Oklahoma City Life & Accident Company, Defendants-Appellees.

No. 1–1177A266.

Court of Appeals of Indiana, First District.

July 12, 1979.

Rehearing Denied Aug. 21, 1979.

J. V. Boles, Kendall, Stevenson & Lowry, Danville, for plaintiffs-appellants.

Robert P. Johnstone, James A. Strain, Peter J. Rusthoven, Barnes, Hickam, Pantzer & Boyd, Indianapolis, M. Dale Palmer, Palmer, Hinkle, Keck & Webb, Danville, for Standard Life & Acc. Ins. Co. (New Standard).

Thomas J. O'Brien, Lind, Deckard & O'Brien, Danville, for Standard Life & Acc. Ins. Co. (Old Standard) and Oklahoma City Life & Acc. Co.

LYBROOK, Judge.

Plaintiffs-appellants Thomas L. and Beatrice Pringle appeal from a judgment entered by Hendricks Superior Court on April 20, 1977, in their cause of action against defendants-appellees Oklahoma City Life & Accident Company, formerly known as Standard Life & Accident Insurance Company (Old Standard), and Standard Life & Accident Insurance Company (New Standard), both Oklahoma-domiciled insurance companies.

The trial court: 1) sustained Old Standard's motion to dismiss, leaving intact its October 19, 1976, order for sanctions; and 2) partially granted New Standard's motion for summary judgment, limiting New Standard's liability to such amounts as might be due the Pringles under the contractual terms of certain insurance policies.

The Pringles raise the following issues for our review:

(1) Whether the trial court erred in giving full faith and credit to a default judgment entered against the appellants and for Old Standard in an Oklahoma state court; and

(2) Whether the trial court erred in limiting New Standard's potential liability.

We affirm.

A chronology of events relevant to this case is as follows:

On October 3, 1971, and on March 13, 1974, the Pringles purchased two health insurance policies in Indiana from Old Standard. In October 1974, Beatrice underwent surgery in Hendricks County and, on or about November 15, the Pringles filed a claim with Old Standard for medical expenses incurred. Old Standard refused to pay the claim, and subsequently rescinded the policies and refunded the premiums paid because it alleged that the Pringles had submitted false information in their policy applications. Correspondence relative to the claim and the policy rescissions was carried on throughout 1975 among the Pringles and their attorney, the Indiana Insurance Commissioner, and Old Standard.

On January 31, 1975, the Oklahoma Insurance Commissioner initiated a rehabilitation and liquidation proceeding under the Oklahoma Uniform Insurers Liquidation Act in the District Court of Oklahoma County, Oklahoma, seeking appointment as conservator in Oklahoma over the assets of Old Standard which had become insolvent. On February 3, 1975, the Oklahoma court appointed the Commissioner conservator of the assets of Old Standard.

On December 31, 1975, the conservator filed his report in the Oklahoma court recommending a plan for the rehabilitation of Old Standard, providing, *inter alia,* that: 1) New Standard would be organized to assume all of Old Standard's insurance policies, policy reserves and policy obligations as defined by policy contract language; 2) Old Standard would, prior to the closing of the court-supervised rehabilitation, use its funds up to a total of $11,163,000 to satisfy all other remaining liabilities not assumed by New Standard; 3) certain assets of Old Standard would be transferred at closing to New Standard to cover a portion of the liabilities assumed by New Standard; and 4) there would be appropriate judicial notice and bar to all known and unknown creditors excepting only those with claims arising under the terms of life and health insurance policies and annuities.

The conservator asked the court to set a date for a hearing on the plan and to order the giving of such notice "as the court deems necessary and proper." The record shows only that "actual and published notice" was given. The Pringles were not notified of the January 27–29, 1976, hearing on the plan although they filed their initial complaint against Old Standard for wrongful cancellation of the policies in Hendricks Superior Court on January 5, 1976, asking $2,600 in actual damages and $200,000 in punitive damages, costs, interest and attorney fees.

After the January hearing, on February 9, 1976, the Oklahoma court, as a condition precedent to the implementation of the plan, ordered the conservator, *inter alia,* to:

"Be prepared to commence hearings relating to the merits of unresolved claims on the 23rd day of March, 1976.

Give at least ten (10) days' notice to all creditors and interested persons by mail of hearings relating to approval of settlements and distributions to claimants.

Give at least twenty (20) days' notice by mail to claimants, creditors, and other interested persons of hearings on the merits of unresolved claims.

Give notice to all persons known to the Conservator who may have a claim against the assets of SLAICO [Old Standard] to file their claims within thirty (30) days from the date hereof or the same will be forever barred from participation in the assets of said company, and that such notice should be in the form attached hereto as 'Exhibit A', and mailed to each such known claimant at his last known address, and by publication for two (2) weeks in the Wall Street Journal and for two (2) weeks in a legal newspaper in Oklahoma County, Oklahoma, and a legal newspaper in Tulsa County, Oklahoma."

Exhibit A said, in part:

"NOTICE IS HEREBY GIVEN to all creditors or other persons who may have claims against the assets of STANDARD LIFE AND ACCIDENT INSURANCE COMPANY [Old Standard], except claims arising under the terms of life, and health and accident insurance policies, . . . that the . . . Judge . . . has fixed . . . the 8th day of March, 1976, as the final day by which proofs of claims must be filed . . ., and that claims not so filed . . . will be forever barred from participation in the assets of STANDARD LIFE AND ACCIDENT INSURANCE COMPANY."

Again, the Pringles received no notice.

After Hendricks Superior Court dismissed their original complaint for failure to comply with Ind. Rules of Procedure, Trial Rule 9.2, the Pringles filed an amended complaint on April 7, 1976. Old Standard filed its answer on April 22.

On or near June 1, 1976, the Oklahoma court approved, and confirmed the implementation of, the rehabilitation plan, finding, *inter alia,* that: 1) the notice ordered by the court on February 9, 1976, had been given and all known and unknown creditors of Old Standard who had failed to file their claims by March 8, 1976, were barred from participation in Old Standard's assets "excepting only those creditors whose claims arise under the terms of life and health insurance policies and annuities"; 2) the court had exclusive jurisdiction over the assets of Old Standard; and 3) the court should retain jurisdiction to determine questions which might arise concerning the plan and its implementation.

On June 1, 1976, Old Standard's assets were transferred to New Standard, Old Standard continuing in receivership under the name of Oklahoma City Life & Accident Company. New Standard immediately computed the amount that would have been due the Pringles had their claim been allowed by Old Standard and attempted on June 15 to deliver that amount to the Pringles.

On June 23, the Pringles filed a motion in Hendricks Superior Court to join New Standard as a party defendant. On August 5, New Standard tendered a check for the Pringles' insurance claim to the Pringles' attorney. On September 9, New Standard was joined as a party defendant in the cause pending in Hendricks County. On October 13, the Pringles amended their complaint against New Standard to allege wrongful and malicious failure to pay their insurance claims, seeking $3,000 in actual damages and $4,500,000 in punitive damages, costs, interest and attorney fees. On October 19, the Hendricks Superior Court awarded the Pringles attorney fees of $400 against Old Standard as a sanction for Old Standard's failure to make discovery.

On November 12, 1976, the conservator filed in the Oklahoma court a request for instructions concerning the action pending

in Hendricks County. After an *ex parte* hearing that same day, the Oklahoma court found, *inter alia*, that: 1) it had exclusive jurisdiction over the assets, and claims against the assets, of Old Standard; and 2) prior to the issuance of complete instructions to the conservator, the Pringles should be given due notice and the right to appear on November 23 for the purpose of asserting any claim, cognizable under the laws of Oklahoma, which they might have against the assets of Old Standard. Notice was sent the Pringles' attorney and received on November 15.

At the November 23 hearing in the Oklahoma court, the Pringles entered a special appearance by counsel solely for the purpose of objecting to the jurisdiction of the Oklahoma court to adjudicate their claim against the assets of Old Standard. The court overruled the objection to its jurisdiction, granted the Pringles a continuance until December 7 to file their claim, and set a hearing on the claim for December 28. On December 7, the Pringles again filed an objection to the jurisdiction of the court. The court treated the objection as a motion to reconsider, allowed counsel to reargue the objection, found no reason to reconsider the prior order, and overruled the motion.

The Pringles did not file their claim, and the conservator filed a motion for default judgment. The Pringles were not notified of a hearing on the motion set for December 15. At the hearing at which the Pringles' attorney objected once again to the court's jurisdiction, the court granted the motion for default judgment and found, *inter alia*, that: 1) delinquency proceedings for Old Standard had been commenced under the Oklahoma Uniform Insurers Liquidation Act; 2) the Oklahoma court had exclusive jurisdiction over the assets of Old Standard, including the authority and jurisdiction to adjudicate and bar claims against these assets; 3) instructions issued by the court allowed the Pringles to appear and file a claim against these assets on or before November 23; 4) actual notice was given to the Pringles of the time, place, nature of, and authority for the November 23 hearing, and all other hearings relating

to their claim; 5) the Pringles appeared specially to object to the jurisdiction of the court to adjudicate their claim against the assets, which objection was overruled; 6) notice comporting with due process was given to the Pringles to file their claim but they failed and refused to do so; 7) a meaningful remedy was available to the Pringles in the delinquency proceedings to pursue all their claims against the assets; and 8) the Pringles should be barred from asserting any claims against the assets and from participating in the assets in the delinquency proceedings. The Pringles appealed neither the Oklahoma court's ruling as to its jurisdiction nor the default judgment.

On January 26, 1977, the conservator filed an amended motion to dismiss or for summary judgment in the cause pending against Old Standard in Hendricks County. On February 4, 1977, the Oklahoma court ordered the termination and dissolution of the corporate existence of Oklahoma City Life & Accident Insurance Company, formerly Old Standard. On February 28, 1977, New Standard filed a motion for summary judgment in Hendricks Superior Court.

In granting the conservator's motion to dismiss the cause against Old Standard, except as to the court-ordered sanctions for failure to make discovery, the Hendricks Superior Court concluded, *inter alia*:

"That after notice and an opportunity to be heard a judgment was rendered against Thomas Pringle and Beatrice Pringle on the same facts and issues set out in their claim in the Hendricks Superior Court in this case, which judgment was not appealed by the Pringles and is now final.

Pursuant to Article IV, Section 1 of the United States Constitution 'Full faith and credit' must be given to the Oklahoma District Court judgment against Thomas Pringle and Beatrice Pringle on the same claim asserted herein.

The doctrine of *res judicata* will bar any subsequent litigation in this case."

In partially granting New Standard's motion for summary judgment, the Hendricks Superior Court concluded, *inter alia*:

"This action arises out of insurance policies issued to Plaintiffs in 1971 and 1974 by Defendant Standard Life & Accident Insurance Company, an Oklahoma Insurance Corporation now known after rehabilitation as Oklahoma City Life & Accident Insurance Company (hereinafter referred to as 'Old Standard'), and the refusal of Old Standard to pay Plaintiffs' claims for amounts allegedly due under said policies.

New Standard was organized as an Oklahoma Insurance Corporation under the statutes of the State of Oklahoma, as part of a Court-supervised statutory rehabilitation proceeding against Old Standard. Said proceeding took place in the District Court in and for Oklahoma County, Oklahoma, in an action entitled '*The State of Oklahoma, ex rel., Gerald Grimes, Insurance Commission v. Standard Life and Accident Insurance Company, an Oklahoma Stock Insurance Corporation, Cause No. CD–75–76.*'

On June 1, 1976, the said District Court in and for Oklahoma County, Oklahoma, entered an Order in the above-named cause approving and confirming implementation of an approved Plan of Rehabilitation for Old Standard, pursuant to which New Standard received assignments of the insurance policies issued by Old Standard, including those involved in this action, subject to an express provision, both of the Agreement of Reinsurance between Old Standard and New Standard and of the Order, that the liability of New Standard under such policies would be limited solely to the contractual liabilities as provided in such policies.

The said District Court in and for Oklahoma County, Oklahoma had jurisdiction in the above-described statutory rehabilitation proceeding involving Old Standard pursuant to which New Standard received assignment of the policies involved in this action, and the Orders of said District Court, including that limiting New Standard's liability under the assignment of such policies solely to the contractual liabilities as provided in such policies, are valid and binding and entitled to full faith and credit in this Court and in this action.

Prior to June 1, 1976, New Standard had assumed no obligation whatsoever with respect to any insurance policies issued by Old Standard, nor had New Standard issued any policy of insurance to Plaintiffs, received any premiums from Plaintiffs or any claims by Plaintiffs under their insurance policies, nor had any contacts with the Plaintiffs or anyone acting on their behalf.

After assuming the contractual obligations on Old Standard on its policies of insurance, New Standard reviewed the claims made by the Plaintiffs under their policies of insurance issued by Old Standard, and determined that the amount to which Plaintiffs would have been entitled under such policies, had Old Standard not denied their claims, was One Thousand One Hundred and Ninety-One Dollars and Ninety-two Cents ($1,191.92).

After making the above-described review and determination of the contractual liability owing to Plaintiffs had their claims not been denied by Old Standard, New Standard issued a check in the amount of $1,191.92, and had it delivered to counsel for Plaintiffs. Said check is presently in the possession of Plaintiffs and/or their attorney.

New Standard has assumed no obligation or duty to Plaintiffs and has performed no acts with respect to them or their claims, other than the acts set forth above and its participation in the defense and evaluation of this action while it has been pending.

There is no genuine issue as to any of the material facts set forth above.

As a matter of law, New Standard had and has no liability, obligation or duty to Plaintiffs other than payment of any amounts that may be due under the contractual terms of the policies of insurance issued to them by Old Standard, a check in satisfaction of which has already been tendered to Plaintiffs by New Standard.

As a matter of law, Plaintiffs are entitled to take nothing by way of their claims against New Standard for punitive damages and any extracontractual liability, and New Standard is entitled to judgment in its favor on said claims.

As a matter of law, Plaintiffs' damages against New Standard, if any, are limited solely to any amounts that may be due under the contractual terms of the policies of insurance issued to them by Old Standard."

### Issue I.

The sole allegation raised by the appellants in their challenge to the trial court's dismissal of their complaint against Old Standard is that the trial court erred in giving full faith and credit to a judgment rendered by a court of a sister state which lacked jurisdiction to render judgment. They contend the Oklahoma court lacked jurisdiction over their claim for any one of the following reasons: 1) Indiana has not adopted the Uniform Insurers Liquidation Act; 2) Indiana is not a signatory nor reciprocal state to the Uniform Insurers Liquidation Act; 3) no ancillary conservator was appointed in Indiana; 4) they received no notice of the January 27–29, 1976, hearing on the proposed rehabilitation plan for Old Standard or of the March 8, 1976, deadline for the filing of claims against Old Standard's assets; 5) the notice they received on November 15, 1976, to file their claim by November 23 was inadequate because the outcome of any hearing on such a claim was predetermined by the court's prior order, entered without notice to the Pringles, barring claims not filed by March 8, 1976; and 6) it was unreasonable under the test of *International Shoe Company v. State of Washington*, (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, for the Oklahoma court to require the Pringles to defend their claim in Oklahoma.

■ We cannot reach the merits of these arguments, however, because we agree with appellees that the Pringles are barred by the doctrine of *res judicata* from collaterally attacking the Oklahoma court's decision that it had jurisdiction over the Pringles and their claim under the doctrine of jurisdictional finality espoused by the United States Supreme Court in *Baldwin v. Iowa State Traveling Mens' Ass'n.*, (1931) 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244, a case dealing with actions brought in two federal courts, and extended in *Durfee v. Duke*, (1963) 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186, a case dealing with actions brought in two state courts as here.

In *Durfee*, the petitioners brought an action against the respondent in a Nebraska court to quiet title to certain bottom land situated on the Missouri River, the main channel of that river forming the boundary between Nebraska and Missouri. The Nebraska court had jurisdiction over the subject matter of the controversy only if the land in question was in Nebraska. The respondent appeared in the Nebraska court explicitly contesting the court's subject-matter jurisdiction. The court found that the land was in Nebraska, that the Nebraska courts therefore had jurisdiction of the subject matter, and that title to the land was in the petitioners. On appeal, the Supreme Court of Nebraska affirmed the trial court's judgment after a trial *de novo*. The respondent did not petition the United States Supreme Court for a writ of certiorari to review the judgment. Later, respondent filed suit against petitioners in a Missouri court to quiet title to the same land, alleging the land was in Missouri. The suit was removed to a federal district court by reason of diversity of citizenship, that court holding that all the issues had been adjudicated and determined in the Nebraska litigation and that the Nebraska judgment was *res judicata* and binding on the Missouri court.

The Supreme Court agreed with the district court, saying, in 375 U.S. at 109–114, 84 S.Ct. at 244–246:

"The constitutional command of full faith and credit, as implemented by Congress, requires that 'judicial proceedings * * * shall have the same full faith and credit in every court within the United States * * * as they have by law

or usage in the courts of such State * * from which they are taken.' *Full faith and credit thus generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it.* 'By the Constitutional provision for full faith and credit, the local doctrines of res judicata, speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here.'

\* \* \* \* \* \*

[W]hile it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. *From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.*

*With respect to questions of jurisdiction over the person, this principle was unambiguously established in Baldwin v. Iowa State Traveling Men's Ass'n,* 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244. There it was held that a federal court in Iowa must give binding effect to the judgment of a federal court in Missouri despite the claim that the original court did not have jurisdiction over the defendant's person, once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum. 'Public policy,' said the Court, 'dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.' [Citation omitted.]

*Following the Baldwin case, this Court soon made clear in a series of decisions that the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter. Davis v. Davis,* 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26; *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; *Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. *Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429. In each of these cases the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum's jurisdiction over the subject matter. In each case this Court held that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties.

\* \* \* \* \* \*

The reasons for such a rule are apparent. In the words of the Court's opinion in *Stoll v. Gottlieb, supra,* 'We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. * * * Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. *After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.*' " (Emphasis added.)

The Pringles twice appeared specially in the Oklahoma court for the purpose of litigating the question of jurisdiction, twice arguing their position, and twice being overruled. They again challenged the court's jurisdiction to no avail at the hearing on the motion for default judgment. They did not appeal the Oklahoma court's jurisdictional ruling which merged into the default judgment, a judgment on the merits which became final when the time in which to appeal it had elapsed. Under the limited inquiry allowed us by *Durfee, supra,* we find that the question of the Oklahoma court's jurisdiction was fully and fairly litigated and finally decided in that court.

Under *Durfee, supra,* to permit a collateral attack on the Oklahoma court's jurisdiction would be a denial of full faith and credit in violation of Article IV, Section 1 of the United States Constitution. The Pringles are barred by *res judicata* from relitigating the question of the Oklahoma court's jurisdiction. The trial court did not err in giving full faith and credit to the judgment of the Oklahoma court.

### Issue II.

Appellants' one-paragraph argument in support of their challenge to the trial court's partial granting of New Standard's motion for summary judgment puts forth the proposition, with supporting authority, that punitive damages are available in Indiana for certain oppressive breaches of contract. Clearly this is the law, *Hibschman Pontiac, Inc. v. Batchelor,* (1977) 266 Ind. 310, 362 N.E.2d 845, but that is not the issue in the case at bar. The issue here is whether the trial court erred in granting summary judgment on the question of whether a claim for punitive damages is available to the Pringles in their particular contract action against New Standard. Consequently, the appellants have waived their second allegation of error by their failure to properly state the issue and argue their position under Ind. Rules of Procedure, Appellate Rule 8.3(A). Had the Pringles preserved the issue, they could not have prevailed.

Under T.R. 56, the trial court shall grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." In the affidavit which accompanied New Standard's motion, an officer of New Standard affirmed that: 1) prior to June 1, 1976, New Standard had assumed no obligation with respect to any insurance policies issued by Old Standard in Indiana; 2) prior to that date, New Standard had no contacts with the Pringles; 3) on that date, the Oklahoma court entered an order approving the rehabilitation plan for Old Standard which involved the reinsurance by New Standard of policies issued by Old Standard to its policyholders; 4) the court order approved the Agreement of Reinsurance between Old Standard and New Standard which explicitly provided that the obligations assumed by New Standard were limited to those defined in the contract terms of the insurance policies; 5) New Standard had never agreed or been ordered by the Oklahoma court to accept liability for any extracontractual claim of any kind against Old Standard; and 6) after assuming Old Standard's contractual obligations, New Standard reviewed the Pringles' claim and delivered to the Pringles' attorney a check for the amount to which the Pringles would have been entitled pursuant to the policies issued by Old Standard if their claim had been allowed by Old Standard.

In their brief in opposition to New Standard's motion for summary judgment, the Pringles did not dispute any of these affirmations of fact. Instead, they argued their conclusion of law that New Standard had extracontractual liability because of procedural and jurisdictional defects in the proceedings in the Oklahoma court which left those proceedings subject to collateral challenge. As discussed above, the proceedings in the Oklahoma court reached final judgment; therefore, the full faith and credit clause of the United States Constitution and the doctrine of *res judicata* preclude collateral attack on that court's judgment and require that it be given binding effect in the courts of Indiana. The trial court

was thus correct in accepting the unchallenged affirmations of fact in New Standard's affidavit and in recognizing that the only issue between the Pringles and New Standard was an issue of law involving the interpretation of the terms of the Agreement of Reinsurance between Old and New Standard. *See Kleen Leen, Inc. v. Mylcraine,* (1977) Ind. App., 369 N.E.2d 638.

The Oklahoma court's order approving the rehabilitation plan for Old Standard included the following provisions:

"That the obligations and liabilities of SLAICO [Old Standard] assumed by New Standard shall be and are hereby strictly limited to (1) the written contractual obligations of SLAICO as defined, limited and expressed in its currently in-force life, health and accident insurance policies and endowment and annuity contracts; the assumed liability shall not include any extra contractual liability of any kind or character or any other liability of SLAICO under such policies, directly or indirectly, or any liability otherwise resulting from any representation made or claimed to have been made or acts committed or claimed to have been committed in the solicitation, sale or servicing thereof by SLAICO, its agents, servants and employees and to (2) other liabilities and obligations of SLAICO to the extent and only to the extent specifically set forth on Exhibit A [not relevant here] attached hereto and none other."

The Agreement of Reinsurance contained the following language:

"New Standard does hereby assume, accept and reinsure all of said reinsured policies, it specifically being understood and provided that the obligations assumed hereby shall be limited to the obligations of Old Standard as defined, limited and expressed in such reinsured policies as written and said assumption of liability shall not include any extracontractual liability of any kind or character or any other liability of Old Standard under the policies, directly or indirectly, or any liability otherwise resulting from any representations made (or claimed to have been made) or acts committed (or claimed to have been committed) in the solicitation, sale or servicing thereof by Old Standard, its agents, servants or employees, except only the assumption of those certain extra contractual liabilities [not relevant here] which New Standard was ordered to assume by the Conservatorship Court on the 28th day of May, 1976, . . . ."

The risk assumed by the reinsurer, New Standard, is determined by the contract of reinsurance. 46 C.J.S. *Insurance* § 1230 (1946). The trial court correctly interpreted the language of the reinsurance agreement. Any extracontractual liability was expressly not assumed by New Standard and remained with Old Standard.

The judgment of the trial court is affirmed.

Affirmed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.